JACOB MESHBESHER v. CHANNELLENE OIL & MANUFACTURING COMPANY.[1]

February 5, 1909.

Nos. 16,005—(249).

**Sale of Impure Oil—Pure Food Statute—Liability.**

The defendant sold to a retail grocer in the city of Minneapolis a quantity of oil, knowing that the same would be sold at retail to his customers for use in cooking their food. The plaintiff purchased of the grocer one quart of the oil for such purpose, which consisted of forty per cent. of mineral oil and sixty per cent. of cotton seed oil. It was injurious to health. His food, which he ate, was cooked in the oil, and he was thereby made seriously ill. Action to recover damages for the injuries so sustained. *Held:*

1. That the findings of fact of the trial court are responsive to the issues made by the pleadings, are supported by the evidence, and sustain the conclusion of law that the defendant is liable to the plaintiff for such damages.

2. Our pure food statute is intended to protect the health of all of the people of the state, and the plaintiff is within the class for whose benefit it is intended; and this case falls within the rule that, where a statute for the benefit or protection of individuals prohibits the doing of an act or imposes a duty, any person who violates the prohibition or neglects the duty is liable to those injured thereby for damages resulting proximately from such violation or neglect.

3. The plaintiff's injuries resulted proximately from defendant's failure to comply with the statute, for it sold the oil to the grocer, knowing that it was to be sold by him to his customers for food purposes. Teal v. American Mining Co., 84 Minn. 320, followed.

4. The fact that the defendant did not know that the oil was impure does not affect the question of its liability, for it was bound to know whether the article which it sold for food was wholesome and complied with the statute.

Action in the municipal court of Minneapolis to recover $500 damages for the manufacture and sale by defendant of impure oil for cooking purposes. The case was tried before Waite, J., who made findings of fact and as conclusion of law found in favor of plaintiff for

[1] Reported in 119 N. W. 428.

$99. From an order denying defendant's motion for judgment or for a new trial, it appealed. Affirmed.

*Thomas C. Daggett*, for appellant.

*George Harold Smith*, for respondent.

START, C. J.

Appeal from the order of the municipal court of the city of Minneapolis denying the defendant's motion for judgment notwithstanding the findings of fact and conclusions of the trial court, or for a new trial.

The here material allegations of the complaint are to the effect following: The defendant is, and at all the times hereinafter mentioned was, engaged in the manufacture and sale to the public and retail dealers of sweet oil to be used as a food and for cooking purposes, and represented the same to be healthful and pure and adapted for use in cooking food. On or about February 9, 1908, plaintiff purchased from one Jacob Neiman, a retail grocer in the city of Minneapolis, one quart of sweet oil, so manufactured for sale by defendant and placed by it with Neiman for sale to the public, and used the same in cooking his food. The sweet oil so purchased by plaintiff was in fact impure and poisonous, and not adapted for cooking purposes, which facts were well known to defendant; but nevertheless defendant maliciously, carelessly, wantonly, and with a reckless disregard to human life, manufactured and placed the impure and poisonous oil on the market for sale, and caused the same to be sold to the plaintiff as pure and healthful cooking oil. The plaintiff, relying on such representations of the defendant, so purchased the impure and poisonous sweet oil and used it in cooking his food, which he ate, and thereby he was poisoned and made dangerously ill, to his damage in the sum of $500. The answer in effect was a general denial.

The issues were tried by the court without a jury, and findings of fact made in substance as follows:

In the city of Minneapolis during the month of February, 1908, defendant sold and delivered to one Jacob Neiman a quantity of oil, which was designed and intended to be used for mingling with human food in the process of cooking the same. Neiman was there engaged

in the retail grocery trade. The oil was sold by the defendant to Neiman with the knowledge that the same would, in the regular course of his business, be sold at retail to his customers for use in cooking their food. Neiman sold and delivered to plaintiff one quart of the oil for such purpose. The oil was used in cooking the plaintiff's food, and in such use was mingled with it. The plaintiff partook of such food and of the oil mingled therewith. The oil at all times stated consisted of about forty per cent. of mineral oil and sixty per cent. of cotton seed oil. The mineral oil, when mingled in such proportion with cotton seed oil, is and was at all such times injurious to health, when taken into the human stomach; and the oil so sold and used, with the mineral oil therein contained, is and was at all such times injurious as stated. The plaintiff was made ill by so eating the food cooked in such oil, whereby he sustained damages in the sum of $99. Other than stated, the trial court found the allegations of the pleadings not true. As a conclusion of law judgment was entered for the plaintiff for such damages.

The statute (R. L. 1905, § 4362) providing for a motion for judgment notwithstanding the verdict has no application to a trial by the court without a jury. Hughes v. Meehan, 84 Minn. 226, 87 N. W. 768; Noble v. Great Northern R. Co., 89 Minn. 147, 94 N. W. 434; Young v. Grieb, 95 Minn. 396, 104 N. W. 131. The motion and notice of appeal are therefore irregular, and can be given effect only as an order denying a motion for a new trial.

The first contention of the defendant, in support of its claim that the trial court erred in denying its motion for a new trial, is to the effect that the action was brought to recover damages for the breach of an express warranty of the purity of the oil, of which there was no proof, but the court permitted a recovery upon an implied warranty; hence there was no evidence to sustain the allegations of the complaint. The assumption upon which the defendant's conclusion rests is not justified by the record. The complaint is indefinite in some respects, and it is not entirely clear that it does not attempt to allege more than one cause of action. But no motion was made to make it more definite, or to require the plaintiff to elect upon which alleged cause of action he would rely. Therefore the questions presented by the assignments of error are whether the findings of fact

are responsive to the issues made by the pleadings, whether they are sustained by the evidence, and, if so, whether they justify the conclusion that the defendant is liable for the damages sustained by the plaintiff.

The defendant urges that the findings of fact are not responsive to the issues made by the pleadings, because the complaint alleges as a cause of action the breach of an express warranty. We are of the opinion that it does not. It is true that. to constitute a warranty the word "warranty" need not be used, and that a clear representation of the quality of a thing sold, made by a seller to the purchaser as a part of the contract of sale, and relied upon by him, is a warranty. If all of the allegations of the complaint herein are read and construed as a whole, it is manifest that it was not the intention of the pleader to declare upon an express warranty, and that the complaint cannot be fairly construed as alleging a breach of such a warranty. On the contrary, the complaint alleges no contractual relations between the parties, nor that any representations as to the purity of the oil were made by the defendant to the plaintiff. The representations were made, according to the allegations of the complaint, to the public, which were relied upon by the plaintiff. Such allegations, perhaps, are strictly not essential to the plaintiff's alleged cause of action, which sounds in tort, but proper as a matter of inducement.

The other allegations of the complaint here material are to the effect that the defendant carelessly and knowingly placed the impure and poisonous oil with a retail grocer for sale to the public as food; that the plaintiff, in ignorance of its true character, and relying upon the representations that it was pure and suitable to be used as food and for cooking purposes, purchased the impure oil from the retail grocer and so used it as a food, whereby he was poisoned and made dangerously ill. The other allegations, that the defendant acted wantonly and maliciously in the premises, are not essential to the plaintiff's cause of action. If they had been proven, they might have affected the assessment of damages.

It may be conceded, for the purpose of this appeal only, that, except for our pure food laws, or similar statutory provisions, the allegations of the complaint would not state a cause of action against the defendant; but, read in connection with the statute, we hold that

they state a cause of action, for they show a neglect to discharge the duty imposed by the pure food statute and a violation of its prohibitions by the defendant. It was not necessary to plead the statute, as it is a public act. The statute (sections 1771 and 1775, R. L. 1905) prohibits and punishes as a misdemeanor the manufacture, sale, or offering for sale of any article as food, if it in itself is injurious, or if it contains any ingredient injurious to health. This statute is intended to protect the health of all of the people of the state. Clearly the plaintiff belongs to the class for whose benefit the statute is intended.

The complaint and the findings of fact of the trial court bring this cause within the rule that where a statute for the protection or benefit of individuals prohibits a person from doing an act, or imposes a duty upon him if he disobeys the prohibition or neglects to perform the duty, he is liable to those for whose protection the statute was enacted for damages resulting proximately from such disobedience or neglect. Negligence is implied from a violation of the statute. Bott v. Pratt, 33 Minn. 323, 23 N. W. 237, 53 Am. 47; Baxter v. Coughlin, 70 Minn. 1, 72 N. W. 797. The plaintiff's injuries in the case resulted proximately from the defendant's failure to comply with the statute, for it sold the impure oil to the plaintiff's grocer, knowing that in the regular course of his business it would be sold to his customers for use in cooking their food. Moon v. Northern Pacific R. Co., 46 Minn. 106, 48 N. W. 679, 24 Am. St. 194; Teal v. American Mining Co., 84 Minn. 320, 87 N. W. 837; 15 Harvard L. Rev. 666. See, in this connection, the case of Huset v. J. I. Case T. M. Co., 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303.

The fact that the trial court did not find that the defendant knew that the oil was impure does not affect the question of its liability; for it was bound to know whether the article, which it sold to be retailed to the customers of the purchaser for food purposes, was sound, wholesome, and complied with the statute. This is a salutary and necessary construction of our pure food statute, which in this respect is analogous to statutes prohibiting the sale of liquor to minors, in construing which courts uniformly hold that an honest belief that the minor was twenty one years of age is no defense. See State v. Shevlin-Carpenter Co., 99 Minn. 158, 166, 108 N. W. 935.

The defendant urges that the trial court held the defendant liable on an implied warranty. The only basis in the record for this claim is that the trial court, in ruling on the admissibility of evidence in answer to the claim of defendant's counsel that the plaintiff must show an express warranty, said: "There is always an implied warranty that articles sold for food are fit for food. I shall rely on the theory until I am satisfied to the contrary." But the court's findings of fact and memorandum show that it did not proceed upon the basis of an implied warranty, but upon the negligence of the defendant implied from a violation of the pure food statute.

The defendant further urges that the facts are not supported by the evidence, because it leaves the question whether the oil which the plaintiff ate made him ill as a matter of pure speculation. On examination of the record we are satisfied that the evidence is ample to sustain a finding that the plaintiff's illness was caused by the impure oil. It follows that the findings of fact are sustained by the evidence, that they are responsive to the issues made by the pleadings, and that they sustain the court's conclusion of law. We do not find any reversible errors in the trial court's rulings as to the admission of evidence.

Order affirmed.