Loren HAGE, etc., Appellant,

Joan B. Ben, Trustee for Natural Guardian of the Heirs and Next-of-Kin of Marvin P. Ben, Appellant,

v.

Catherine A. STADE, deceased, d. b. a. Stratford Hotel et al, Defendants,

Minnesota Department of Public Safety et al, Respondents.

No. 50243.

Supreme Court of Minnesota.

Feb. 27, 1981.

Rehearing Denied March 23, 1981.

Thysell Gjevre McLarnan Hannaher Vaa & Skatvold and Galen J. Vaa, Moorhead, for Hage, etc.

Lewis Price & Michalski and Michael J. Michalski, Windom, for Ben.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen. and David W. McKenna, Sp. Asst. Atty. Gen., St. Paul, for respondents.

TODD, Justice.

Plaintiffs, as trustees for the heirs of 13 people who died in a hotel fire on January

28, 1977, brought wrongful death actions against the owner of the hotel (Catherine Stade, d. b. a. Stratford Hotel); the City of Breckenridge, where the hotel was located; the State of Minnesota; the Minnesota Department and Commissioner of Public Safety; the Department of Public Health; the Office of State Fire Marshal; and Wesley Werner, individually and as State Fire Marshal. The District Court of Wilkin County granted summary judgment to defendants City of Breckenridge, the State of Minnesota, and all state agencies.

Plaintiffs appeal from the portion of the trial court's order granting summary judgment to the State of Minnesota and its agencies. We affirm.

The Stratford Hotel in Breckenridge, Minnesota, caught fire in the early hours of January 28, 1977. Plaintiffs' decedents were guests in the hotel that night. One hotel guest who was awakened by the fire was rescued from his room. The other guests, as well as a hotel employee and Catherine Stade, the owner of the hotel, died in the fire.

None of the persons present at the scene of the fire heard an alarm from the hotel before or during the fire. The only alarm in the hotel was a manual one. The alarm switch was located approximately 10 feet from the desk in the hotel lobby. Catherine Stade was stationed at the hotel desk that night. She was 81 years old, partially crippled, and apparently was overcome by smoke before she could get to the fire alarm.

The actual source of the fire is unknown, but several witnesses testified that it may have been caused by arson. Factors which might have contributed to the spread of the blaze and the lack of warning to the occupants of the hotel include the absence of smoke detectors and sprinklers in the hotel, the wooden interior construction, open stairwells and transoms above room doors, and flammable materials stored in the basement of the hotel.

The Stratford was last inspected by Deputy State Fire Marshal C. C. Tallman on June 11, 1975. This was several months before the Uniform Fire Code was adopted in Minnesota by the Commissioner of Public Safety through the Division of the Fire Marshal on October 3, 1975. The Stratford was not inspected by a state official subsequent to this time, although it was inspected by the Fire Chief of Breckenridge, Richard Thompson, in June 1976. In the past, when Tallman had mentioned potential fire hazards to Stade after his inspections, she usually corrected them promptly.

The issue presented is: Did the trial court properly grant respondents' motion for summary judgment on the issue of the liability of the State of Minnesota and its agents for alleged negligent fire safety inspection and enforcement at the Stratford Hotel?

■ The thrust of plaintiffs' claims is that the State of Minnesota and its agents negligently failed to enforce proper fire safety measures at the Stratford Hotel and that this failure directly contributed to the death of plaintiffs' decedents. Plaintiffs argue that state agents failed to perform a required annual inspection of the hotel, negligently conducted the inspections that did take place, and failed to require correction of safety hazards known to them. The trial court did not reach the issue of whether respondents had been negligent. Instead, the trial court concluded that the state had undertaken to enact fire safety regulations and perform inspections for the benefit of the public as a whole and not to protect a particular class of persons. Therefore, negligent inspection by a state agency did not breach a duty to third parties, and the third parties (here, plaintiffs) did not have a cause of action against the state. We agree with the trial court that the state can only be liable for negligent omissions if it owes a special duty to a particular class of persons.

The distinction between a public duty and a special duty was recently discussed and reaffirmed by this court in *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801 (Minn. 1979). In *Cracraft*, the City of St. Louis Park had enacted a fire prevention ordi-

nance which provided that all places of public assembly must be inspected at least once every month. Pursuant to the ordinance, a city inspector inspected a high school. He found no major violations, and sent a letter to school officials outlining the minor violations that he had discovered. Forty-four days after his inspection, a large drum of duplicating fluid ignited on the loading dock of the school, which was adjacent to the football field. Two students were killed and a third was severely injured. The presence of the drum on the dock was a violation of the city fire code.

■ This court held in *Cracraft* that although the common-law doctrine of sovereign immunity from tort liability had been abolished by the Minnesota Legislature, Minn.Stat. § 3.736 (1978), in response to our decision in *Nieting v. Blondeil*, 306 Minn. 122, 235 N.W.2d 597 (1975), the distinction between public duties and special duties is still valid. A duty owed to the public in general cannot be the basis of a negligence action, but a special duty owed to individual members of the public or to a special class can be the basis of such a claim. As stated in *Cracraft* :

> [A] municipality does not owe any individual a duty of care merely by the fact that it enacts a general ordinance requiring fire code inspection or by the fact that it undertakes an inspection for fire code violations. A duty of care arises only when there are additional indicia that the municipality has undertaken the responsibility of not only protecting itself, but also undertaken the responsibility of protecting a particular class of persons from the risks associated with the fire code violations.

279 N.W.2d at 806.

The *Cracraft* opinion enumerates four factors that should be considered in determining whether a government entity has assumed a special duty to act for the protection of others: first, the government's knowledge of the dangerous condition; second, reasonable reliance by persons on the government's representations and conduct (not reliance on the inspections in general, but on specific actions or representations which cause the persons to forego other alternatives for protecting themselves); third, an ordinance or statute setting forth mandatory acts clearly for the protection of a particular class of persons; and finally, the government's use of due care to avoid increasing the risk of harm. 279 N.W.2d at 806–07.

Applying our analysis in *Cracraft* to the instant case, we conclude that the trial court was correct in holding that the second and fourth factors are not present; namely, specific reliance on the government's representations, and a lack of due care by the government which increased the risk of harm.

■ In *Cracraft*, the law under consideration was a city ordinance that required the city to inspect and correct fire code violations in places of public assembly. We found that the ordinance did not create a mandatory duty for the benefit of a particular class of persons as follows:

> The municipality's own ordinances require that it undertake inspections for fire code violations. However, such inspections are required for the purpose of protecting the interests of the municipality as a whole against the fire hazards of the person inspected. The inspections are not undertaken for the purpose of assuring either the person inspected or third persons that the building is free from all fire hazards, just as the state's issuance of a driver's license is no assurance that the licensed person will be a safe driver. Because the ordinances are designed to protect the municipality's own interests, rather than the interests of a particular class of individuals, only a "public" duty to inspect is created.

279 N.W.2d at 805 (footnote omitted). Similarly, in *Hoffert v. Owatonna Inn Towne Motel, Inc.*, 293 Minn. 220, 199 N.W.2d 158 (1972), we held that a building code ordinance did not create a special duty owed to the plaintiffs and stated:

> Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure

that construction within the corporate limits of the municipality meets the standards established. As such, they are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes.

293 Minn. at 223, 199 N.W.2d at 160. The same result is required with respect to Minn.Stat. § 299F.46, subd. 2 (1976) under consideration here. This statute establishes general fire inspection and fire code enforcement requirements that are applicable to "hotels" within the statutory definition. As in *Cracraft*, it is apparent that the statute benefits the public as a whole protecting against fire hazards associated with "hotels." There is no indication that the state, by the enactment of this statute, has voluntarily assumed "the responsibility of protecting a particular class of persons from the risks associated with fire code violations." 279 N.W.2d at 806.

█ It is argued that this statute is distinguishable from the ordinances considered in *Cracraft* and *Hoffert* because it concerns "hotels" while the *Cracraft* and *Hoffert* ordinances covered a broader category of buildings. The mere fact that a statute addresses fire hazards in a narrower category of buildings, however, should not alone be determinative of whether the state has voluntarily assumed a duty to a particular class of persons. A fire inspection statute that addresses a certain category of buildings may be so written merely because of the recognition that different types of buildings have varying fire hazards. It is also argued that the statute creates a special duty because it identifies a particular class of persons; namely, persons who pay for sleeping accommodations. It is apparent that the statute protects not only persons who pay to sleep in hotels, but also hotel restaurant patrons, persons who visit the hotel, persons who attend meetings there, and even neighboring buildings which are potentially harmed by hotel fires. As such, the statute protects the state; that is, the public as a whole. Thus, the failure to comply with the statute may not be a basis for imposing liability on the state.

The cases which the appellants cite in support of their position are completely inapposite to the case at hand. *Campbell v. City of Bellvue*, 85 Wash.2d 1, 530 P.2d 234 (1975), *second appeal on other grounds*, 86 Wash.2d 572, 546 P.2d 922 (1976), involved a suit against a city for failure of the city to assure compliance with its electrical code that resulted in the electrocution of two children. The opinion indicates that, prior to accident involved therein, a city inspector had discovered the electrical code violation but then failed to disconnect the nonconforming wiring or require a correction of the violation. It was further shown that the city had assured the plaintiffs through a neighbor that the nonconforming situation had been corrected and that the plaintiffs had relied on these assurances. The court relied on these specific facts of knowledge by the city and reliance by the plaintiffs in determining that a special relationship between the city and the plaintiffs existed and that, therefore, the city owed a duty to plaintiffs to assure compliance with the city's electrical code. No facts indicating knowledge or reliance are present in this case.

*Runkel v. City of New York*, 282 App. Div. 173, 123 N.Y.S.2d 485 (1953), *affirmed on second appeal on other grounds sub nom., Runkel v. Homelsky*, 286 App.Div. 1101, 145 N.Y.S.2d 729 (1955), involved a suit against a city for injuries sustained by children when an abandoned building collapsed. A city inspector had previously found the building not to be in compliance with the city code and had recommended that the building be secured or demolished. Thereafter, no further action was taken by the city prior to the building's collapse. As in *Campbell*, the court emphasized the knowledge of the city in determining that the city had violated a duty to plaintiffs to abate the dangerous conditions.

The case of *McCorkell v. City of Northfield*, 266 Minn. 267, 123 N.W.2d 367 (1963), *second appeal affirmed on other grounds*, 272 Minn. 24, 136 N.W.2d 840 (1965), in-

volved the asserted liability of a municipality for a breach of duty in the operation of its jail. In that case, a prisoner died as a result of asphyxiation caused by a fire in an unattended jail. A Minnesota statute required that a custodian be on duty at all times in a jail. This court held that this statute clearly imposed a duty of care for the benefit of prisoners. *McCorkell*, however, did not involve the duty of a governmental entity to assure that third persons comply with its laws, which is involved in this case. Instead, it concerned a primary governmental duty to comply with laws concerning a facility that was owned and operated by the city. This duty is analogous to that of a private person to maintain, in compliance with the laws, buildings over which the person has a proprietary interest. *See Lorshbough v. Township of Buzzle*, 258 N.W.2d 96 (Minn.1977).[1]

We hold as a matter of law that there are no facts indicating actual knowledge in this case. The record indicates that, although Deputy Fire Marshal Tallman had inspected the Stratford Hotel in the past, a state inspector had not been to the hotel since the enactment of the Uniform Fire Code. No claim is made by plaintiffs that the Stratford failed to meet the former fire safety requirements of Minn. Stat. §§ 157.01–.14 (1974). Thus, there is no evidence that the state had actual knowledge of any dangerous conditions

which were violations of any fire code and which would serve to impose a special duty on the state under the first *Cracraft* factor.[2]

Based on the foregoing, the judgment of the trial court is affirmed.

SCOTT, Justice (dissenting).

The penetrating thrust of abolishing governmental immunity is one of equality for all. In effectuating Minnesota's own Constitution art. I, § 8, mandating that "[e]very person is entitled to a certain remedy in the laws for all injuries or wrongs * * *," there seems no reason for not accepting the abolishment of governmental immunity. This the majority has refused to do.

As a reflection of the majority's attitude in the field of governmental immunity, the Iowa Supreme Court, in *Wilson v. Nepstad*, 282 N.W.2d 664 (1979), stated that "[t]he state of Minnesota law after *Cracraft* * * * is at best unsettled." *Id.* at 668 (citation omitted). I find the reasoning used by the Iowa Supreme Court persuasive. That case also was concerned with whether a governmental entity may be liable for negligently failing to enforce a fire code. In *Wilson* the Iowa Supreme Court, after reviewing strikingly similar facts and issues, reversed a trial court's determination that the plaintiff's complaint failed to state a cause of action.[1]

1. *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 807, n. 10 (Minn.1979), may have overstated the significance of *Campbell v. City of Bellevue*, 85 Wash.2d 1, 530 P.2d 234 (1975), *Runkel v. City of New York*, 282 App.Div. 173, 123 N.Y.S.2d 485 (1953), and *McCorkell v. City of Northfield*, 266 Minn. 267, 123 N.W.2d 367 (1963), decisions discussed above, by suggesting that liability was imposed on the municipalities in those cases merely because those municipalities had violated laws which were created for the benefit of a particular class of persons. In *Campbell* and *Runkel*, liability was imposed because each municipality owed a duty to the plaintiffs not simply because an ordinance created a mandatory duty on it, but because the municipality had specific knowledge of code violations and/or because of plaintiffs' reliance. The *McCorkell* case involved a different type of duty created by statute than the duty of assuring that third persons comply with the law.

2. In considering the knowledge factor, we decline to accept the view that a special duty may be created based on a finding of constructive knowledge on the part of the state or its agent. This suggestion clearly contravenes our holding in *Cracraft*. There, we held that a special duty could only be created if the state had *actual knowledge* of a violation of a law constituting a dangerous condition. 279 N.W.2d at 806.

1. The *Wilson* court stated:

These ordinances and statutes obviously were designed for the protection of a special, *identifiable group of persons*—lawful occupants of multiple dwellings—from a particular harm, injury or death from fire. * * * They do not fall within the principle of *Restatement* section 288(b). Their *exclusive* purpose is not securing rights or privileges to which all members of the public are entitled. The specificity of statutes relating to fire es-

The uncertainty the Iowa Supreme Court found in Minnesota law is further exacerbated by the majority holding in the instant case. The majority opinion reintroduces into Minnesota law the proposition that "the king can do no wrong"[2] under the guise of the public-duty rule. The artificiality of the public duty-special duty distinction was also recently recognized by the Alaska and Wisconsin Supreme Courts. In *Adams v. State*, 555 P.2d 235 (Alaska 1976), plaintiffs brought suit against the state, alleging that due to the negligent inspection of an Anchorage fire inspector, a hotel fire occurred in which five people died. As in the instant case, the state's attorney argued that the building codes and fire inspection laws enacted by the Alaska Legislature were for the benefit of the general public alone. In rejecting the state's argument, the court stated:

> The purpose of fire inspection is to protect life and property from fire; the purpose of [this] inspection was to discover and alleviate fire hazards endangering users of the hotel. Plaintiffs or their decedents were members of that class; they were the intended beneficiaries of the inspection services provided and the

foreseeable victims of the fire hazards left uncorrected.

\* \* \* \* \* \*

Second, we consider that the "duty to all, duty to no-one" doctrine is in reality a form of sovereign immunity, which is a matter dealt with by statute in Alaska, and not to be amplified by court-created doctrine. An application of the public duty doctrine here would result in finding no duty owed the plaintiffs or their decedents by the state, because, although they were foreseeable victims and a private defendant would have owed such a duty, no "special relationship" between the parties existed. Why should the establishment of duty become more difficult when the state is the defendant? Where there is no immunity, the state is to be treated like a private litigant. To allow the public duty doctrine to disturb this equality would create immunity where the legislature has not.

*Id.* at 241–42.

The Wisconsin Supreme Court used similar reasoning in *Coffey v. City of Milwaukee*, 74 Wis.2d 526, 247 N.W.2d 132 (1976), in holding that a complaint was not de-

---

capes and exits together with the location, classification, construction, arrangement, signing, and lighting thereof, §§ 103.3–.9, coupled with statutory directions to municipal inspectors to "carefully inspect" for violations and serve notice on noncomplying owners, §§ 103.13–.17, evidences a purpose to protect occupants of multi-family dwellings and other specified structures (the only persons endangered by faulty or nonexistent fire escapes or exits), not members of the public generally.
282 N.W.2d at 672 (citations omitted; emphasis in original).

**2.** The doctrine of sovereign immunity derived from this maxim. *See* 1 W. Blackstone, *Commentaries on the Law of England* 238 (1765); 3 W. Holdsworth, *A History of English Law* 463–69 (5th ed. 1942). In *Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597 (1975), we stated that "[t]he doctrine of sovereign immunity is an exception to the fundamental concept of tort law that liability follows tortious conduct \* \* \* [and that] we [were] aware of no substantial reasons \* \* \* which support the continuation of this exception to the well-established principle of tort law." *Id.* at 128, 235 N.W.2d at 601. Why the majority opinion has decided to aban-

don the philosophy expressed in *Nieting* is never clearly articulated here or in *Cracraft*.

Today's holding is also inconsistent with *Kossak v. Stalling*, 277 N.W.2d 30 (Minn.1979), wherein we stated that the application of different standards "in effect draws a distinction between municipal and private tortfeasors and consequently distinguishes between victims of governmental and nongovernmental wrongdoers." *Id.* at 34.

Although *Cracraft* and the majority opinion in the instant case stress that the public duty-special duty distinction creates no special rule for governmental entities, and places them on the same footing as any other tortfeasors, recent caselaw from other jurisdictions reveals that a private tortfeasor would undoubtedly be subject to liability if it had negligently inspected the Stratford Hotel. *See, e. g., Hill v. United States Fidelity & Guaranty Co.*, 428 F.2d 112 (5th Cir. 1970), *cert. denied*, 400 U.S. 1008, 91 S.Ct. 564, 27 L.Ed.2d 621 (1971); *Beasley v. MacDonald Engineering Co.*, 287 Ala. 189, 249 So.2d 844 (1971); *Sims v. American Casualty Co.*, 131 Ga.App. 461, 206 S.E.2d 121 (1974); *Buszta v. Svather*, 102 R.I. 609, 232 A.2d 396 (1967).

murrable on grounds that the building inspector was negligent in performing merely a "public" duty. In addition to the persuasive reasons contained in the Iowa, Wisconsin and Alaska Supreme Court opinions, several compelling reasons exist why the *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801 (Minn.1979), doctrine should be overruled, or at least modified.

First, until *Hoffert* and *Cracraft* this court always held that a violation of a statute may provide the basis for a negligence action if a two-party inquiry is satisfied—the damage suffered by the plaintiff must be of such a nature as was contemplated by the statute, and the plaintiff must be within the class of persons intended to be protected by the statute. As Mr. Justice Mitchell succinctly stated almost a century ago:

> It is now well settled, certainly in this state, that where a statute or municipal ordinance imposes upon any person a specific duty for the protection or benefit of others, if he neglects to perform that duty he is liable to those for whose protection or benefit it was imposed for any injuries of the character which the statute or ordinance was designed to prevent, and which were proximately produced by such neglect.

*Osborne v. McMasters*, 40 Minn. 103, 104, 41 N.W. 543, 543 (1889).[3] Justice Mitchell's statutory duty analysis was most recently followed in *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548, 558–59 (Minn.1977), and *Zerby v. Warren*, 297 Minn. 134, 139, 210 N.W.2d 58, 62 (1973).

Notwithstanding the long history of deciding statutory duty cases in this fashion, *Cracraft* established a four-factor test that treats governmental entities differently than private citizens. This important shift in analysis was never commented upon in *Cracraft*. Instead, the *Cracraft* court indicated that:

[T]he distinction between public duty and special duty applies to alleged private tortfeasors as well as alleged public tortfeasors. This distinction, therefore, is neither a fiction, nor a relic of the days of sovereign immunity. It is a well-established principle of negligence law applicable to tort actions against individuals as well as governments.

279 N.W.2d at 805–06. However, our recent decision in *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn.1977), clearly indicates that the *Cracraft* doctrine has *no* application to private tortfeasors. In *Pacific Indemnity Co.*, the court indicated that one of the defendants was negligent as a matter of law for violating "certain ordinances of the city of Rochester which governed the installation of heating systems and provided for certain minimum clearances between furnaces and surrounding walls." *Id.* at 558. In so holding, the *Pacific Indemnity Co.* court *never* analyzed the distinction between public and special duties. Instead, the court stated:

> The trial judge found that the ordinance had been violated by Yale in installing the furnace. Based on the record, reasonable minds could not differ as to that finding. It is well settled that breach of a statute gives rise to negligence per se if the persons harmed by that violation are within the intended protection of the statute and the harm suffered is of the type the legislation was intended to prevent. *Osborne v. McMasters*, 40 Minn. 103, 41 N.W. 543 (1889); *Dart v. Pure Oil Co.*, 223 Minn. 526, 27 N.W.2d 555 (1947); *Zerby v. Warren*, 297 Minn. 134, 210 N.W.2d 58 (1973). This rule is equally applicable to violations of ordinances. See, 13B Dunnell, Dig. (3 ed.) § 6976, and cases cited at note 53. The statute or ordinance imposes a fixed duty of care, so its breach constitutes conclusive evidence of negligence. *Zerby v. Warren, supra.* We hold that the trial court properly

---

**3.** The two-pronged statutory duty test enunciated by Mr. Justice Mitchell in *Osborne* has its genesis in the leading English case of *Gorris v. Scott*, L.R. 9 Ex. 125 (1874). Commentators often cite *Osborne* and *Dart v. Pure Oil Co.*, 223 Minn. 526, 27 N.W.2d 555 (1947), which contains similar reasoning, as providing a scholarly analysis of statutory duty problems. *See* W. Prosser, *Handbook of the Law of Torts* § 36 (4th ed. 1971).

found as a matter of law that Yale was negligent in its installation of the furnace. In light of this conclusion, it is not necessary to discuss the other issues raised by Yale in this regard.

*Id.* at 558–59.

The *Pacific Indemnity Co.* court engaged in the traditional two-factor statutory liability analysis, instead of *Cracraft's* four-factor special duty analysis. Consequently, one must seriously question *Cracraft's* fundamental premise—that the special duty rule applies to public as well as to private tortfeasors.[4]

Second, the *Cracraft* court's misapplication of the *Restatement (Second) of Torts* § 288 (1965) continues to be followed by the majority opinion in the instant case. Three of the *Cracraft* factors—actual knowledge, reliance, and aggravation of harm have never had any bearing on statutory duty cases. Only the third *Cracraft* factor—whether a statute or ordinance was enacted for the protection of a particular class of persons rather than for the protection of the public generally—bears any resemblance to the statutory duty analysis contained in cases such as *Osborne* and *Dart.* Our Section 288 cases decided prior to *Cracraft* followed the traditional statutory

duty analysis. *See, e. g., Kronzer v. First National Bank*, 305 Minn. 415, 424–25, 235 N.W.2d 187, 193 (1975); *Nees v. Minneapolis Street Railway*, 218 Minn. 532, 535–36, 16 N.W.2d 758, 761 (1944); Comment, *Municipal Tort Liability and the Public Duty Rule: A Matter of Statutory Analysis*, 6 Wm. Mitchell L.Rev. 391, 411 (1980).

Third, *Cracraft* and the majority opinion erroneously divide all statutory duty cases involving a governmental tortfeasor into two categories. In the first category are cases in which a statute or ordinance benefits the general public in any way. Falling within the second category are cases in which a statute or ordinance protects specific individuals. *Cracraft* and the instant case hold that only cases falling within the latter category are actionable. This analysis ignores the possibility that many statutes, as in the instant case, are intended to protect the general public *and* specific individuals.[5] *Anderson v. Settergren*, 100 Minn. 294, 111 N.W. 279 (1907), discussed this type of statute. In *Anderson*, contrary to a Minnesota statute,[6] the defendant loaned a firearm to a minor who subsequently injured plaintiff with the weapon. The *Anderson* court held that breach of the statute was actionable negligence. In so holding, the court stated:

**4.** A similar conclusion was reached in Comment, *Municipal Tort Liability and the Public Duty Rule: A Matter of Statutory Analysis*, 6 Wm. Mitchell L.Rev. 391 (1980):

> The approach adopted by the court in *Hoffert* and modified by the *Cracraft* court's four-factor analysis creates a double standard distinguishing cases involving public tortfeasors from cases in which only private parties are present.

*Id.* at 412. Arguably, if the Minnesota Legislature had enacted legislation establishing such a "double standard," it would violate the equal protection clause of the Minnesota Constitution. *Cf. Kossak v. Stalling*, 277 N.W.2d 30 (Minn.1979) (declaring unconstitutional the commencement-of-suit requirement contained in Minn.Stat. § 466.05 (1978).

**5.** Under *Restatement (Second) of Torts* § 288 (1965), a statute cannot be the basis of a negligence action if it is intended to protect the public *exclusively.* This is the "common law" basis for the public duty special duty distinction in *Cracraft.* Yet today the majority admits that the statute now under consideration is intended to protect a limited class of hotel

patrons *and* the public generally. The majority opinion states that "[i]t is apparent that the statute protects not only persons who pay to sleep in hotels, but also hotel restaurant patrons, persons who visit the hotel, persons who attend meetings there, and even neighboring buildings which are potentially harmed by hotel fires." Majority opinion at 287. Thus, there can be no doubt that this court is willing to permit a double standard when the state is a defendant.

**6.** The *Anderson* court indicated that:

> The statute (section 6946, G.S.1894) in force at the time when the facts in this case occurred provided:
>
> That it shall be unlawful for any minor person under the age of fourteen years to handle or have in his possession or control, except while accompanied by or under the immediate charge of his parent or guardian, any firearm of any species whatever, for hunting or target practice; or any other purpose whatever.

100 Minn. at 295, 111 N.W.2d at 279.

There are also authorities to the effect that a statute may create, not only a public duty, but a duty to private persons, the breach of which may be actionable negligence * * *. *[T]he present general, if not universal, trend of American authorities, is to construe legislative enactments of this type as creating a duty to both the public and to private individuals, and to liberally interpret the class of persons for whose benefit the law was made.*

*Id.* at 296–97, 111 N.W. at 279–80 (emphasis added).

Two recent Washington Supreme Court cases also indicate how statutes or ordinances may create *both* a duty to the general public *and* a duty to private individuals. In *Campbell v. Bellevue*, 85 Wash.2d 1, 530 P.2d 234 (1975),[7] a city electrical inspector found code violations in outdoor wiring strung through a creek, but made no attempt to initiate corrective action based on the investigation. The plaintiff's wife was later electrocuted while attempting to save her son, who had fallen into the creek. The court found the city liable, stating that "these [electrical code] requirements were not only designed for the protection of the general public, but more particularly for those persons or class of persons residing within the ambit of the danger involved * * *." *Id.* at 13, 530 P.2d at 241. Similarly, in *Halvorson v. Dahl*, 89 Wash.2d 673, 574 P.2d 1190 (1978), plaintiff brought an action for negligent building and safety inspection which allegedly resulted in her husband's death in a Seattle hotel fire. The court imposed liability, stating that the Seattle Housing Code was enacted to benefit a "specifically identified group of persons *as well* as * * * the general public." *Id.* at 677, 574 P.2d at 1193 (emphasis added).

Fourth, until *Hoffert* and *Cracraft* this court routinely held that statutes "induced by public considerations of safety" were to be broadly construed to effectuate the general goal sought by the statute. *Judd v. Landin*, 211 Minn. 465, 470, 1 N.W.2d 861,

864 (1942). For example, in *Travelers Insurance Co. v. Iron Ranges Natural Gas Co.*, 289 Minn. 260, 183 N.W.2d 784 (1971), this court broadly construed the class intended to be protected by the statute in question. In responding to the argument that safety statutes not limited by their terms are enacted for the benefit of every member of the public who is exposed to injury or loss by a violation, the court stated that:

> As a general rule, a statute is intended to protect those who may normally be expected to suffer particular injury from its violation * * *. To ascertain this protected group the court looks to the statutory language in light of the evils to be remedied or the harm to be prevented.

*Id.* at 264, 183 N.W.2d at 787–88 (citation omitted). The following Minnesota case law also is indicative of the broad construction previously given to statutes enacted because of public considerations of safety: *Zerby v. Warren*, 297 Minn. 134, 210 N.W.2d 58 (1973) (sale of glue to minors); *Meshbesher v. Channellene Oil & Mfg. Co.*, 107 Minn. 104, 119 N.W. 428 (1909) (violation of pure food act); *Osborne v. McMasters*, 40 Minn. 103, 41 N.W. 543 (1889) (violation of statute requiring druggists to label poisons).

Finally, because the *Hoffert* decision was the underlying basis for *Cracraft*, an examination of *Hoffert*'s application of the public duty doctrine is necessary. The *Hoffert* court relied upon three Minnesota cases: *Hitchcock v. County of Sherburne*, 227 Minn. 132, 34 N.W.2d 342 (1948) (county not liable for negligent maintenance of a county road); *Stevens v. North States Motor, Inc.*, 161 Minn. 345, 201 N.W. 435 (1925) (municipality not liable for construction of road); and *Roerig v. Houghton*, 144 Minn. 231, 175 N.W. 542 (1919) (city not liable for damages sustained by plaintiff resulting from construction delays), to support its holding that a building inspector acts solely for the benefit of the general public. As indicated in Comment, *Municipal Tort Liability and the Public Duty Rule: A Matter*

---

7. The *Bellevue* decision was cited with approval by the *Cracraft* majority opinion as an example of "a statute containing mandatory acts for the benefit of a class of persons." 279 N.W.2d at 807 n.10.

*of Statutory Analysis*, 6 Wm. Mitchell L.Rev. 391 (1980), this reliance was misplaced because—

> *Hitchcock, Stevens,* and *Roerig* * * * were decided prior to enactment of the statute that abrogated the immunity of municipalities from tort claims. The decisions in *Hitchcock, Stevens,* and *Roerig* were based upon the rule that a governmental body would not be held liable for the negligent performance of a governmental, as opposed to a proprietary, function.
>
> *       *       *       *       *       *
>
> The distinction between governmental and proprietary functions as applied by the Court in *Hitchcock, Stevens* and *Roerig*, was explicitly abolished by the Minnesota Legislature in 1963 when it enacted section 466.02 of the Minnesota Municipal Tort Liability Act * * *. Thus, the three cases relied upon by the *Hoffert* court to establish what has become known as the "public duty rule" were declared by the Legislature no longer to be applicable in cases involving municipal tort liability.

*Id.* at 405, 408 (footnotes omitted). Two recent decisions from the Oregon and Florida Supreme Courts support the above analysis. In *Brennen v. City of Eugene*, 285 Or. 401, 591 P.2d 719 (1979), the plaintiff alleged that the city, through its employees, negligently issued a license to a taxicab service that did not possess the minimum liability insurance required by a city ordinance. The city argued that its employees' duty ran only to the general public, and not to specific individuals. The Oregon Supreme Court rejected the city's argument in part because the common-law public duty rule could not survive the Oregon Legislature's abrogation of sovereign immunity.

In *Commercial Carrier Corp. v. Indian River County*, 371 So.2d 1010 (Fla.1979), the Florida Supreme Court discarded the public-private duty distinction. In so doing, the Florida Court expressly discarded its prior holding in *Modlin v. City of Miami Beach*, 201 So.2d 70 (Fla.1967), which *Cracraft* relied upon. *See* 279 N.W.2d at 806 n.6. The Florida Supreme Court reasoned that because the Florida Legislature had done away with sovereign immunity the court-made public-private duty distinction also had to be abrogated. In rejecting the argument that a governmental entity owes a duty only to the public in general, the *Commercial Carrier* court stated:

> [W]e believe it to be circuitous reasoning to conclude that no cause of action exists for a negligent act or omission by an agent of the state or its political subdivisions where the duty breached is said to be owed to the public at large but not to any particular person. This is the "general duty"-"special duty" dichotomy emanating from *Modlin* * * * [I]t is clear that the *Modlin* doctrine is a function of municipal sovereign immunity and not a traditional negligence concept which has meaning apart from the governmental setting.

371 So.2d at 1016. Based on the reasoning expressed by the Oregon and Florida Supreme Courts, I would hold that the anachronistic "public duty" rule does not survive the Minnesota Legislature's enactment of the Municipal Tort Liability Act, since that act has, in effect, repealed sovereign immunity.

I also believe that the trial court's summary judgment order should be reversed because the unique facts in this case satisfy at least one or more of the *Cracraft* factors. The first *Cracraft* factor is whether the governmental entity had actual [8] knowledge

---

**8.** *Cracraft* specifically requires "actual knowledge of a dangerous condition." 279 N.W.2d at 806. The majority opinion in the instant case also holds that liability may not be imposed "on a finding of constructive knowledge on the part of the state or its agent." Majority opinion at 288 n.2. Such reasoning, however, is inconsistent with *Lorshbough v. Township of*

*Buzzle*, 258 N.W.2d 96 (Minn.1977), in which this court stated:

> The principle is that a government unit owes a particular individual a duty of care when its officer or agent, in a position and with authority to act, *has or should have had knowledge* of a condition that violates safety standards prescribed by statute or regulation, and

of the alleged dangerous condition. Concerning this factor, the majority opinion states that "there is no evidence that the state had actual knowledge of any dangerous conditions which were violations of any fire code and which would serve to impose a special duty on the state under the first *Cracraft* factor." (Footnote omitted.) I cannot agree with this reasoning.

Since 1965 Deputy Fire Marshal Tallman made inspections of the Stratford almost every year. As a result of these inspections, state employees admitted that they knew (1) that the hotel had only a manual fire alarm; (2) that old hotels, especially wooden ones such as the Stratford, were known to be especially hazardous and inspections of them were a priority in the Office of the State Fire Marshal; (3) that the Stratford alarm was never tested during any inspection; (4) that although Mrs. Stade was in frail health,[9] no effort was made to inquire which "responsible employee" would attend the desk to activate the fire alarm if a fire occurred; and (5) that the transoms and open stairwells were fire hazards. In addition to Tallman's inspections, the state also knew of the Stratford's allegedly dangerous conditions through the 1973 and 1975 reports of Richard Astrup, Public Health Sanitarian for the Minnesota Department of Health. Astrup's 1973 report, which bore a caption "Attention Fire Marshal," noted the fire hazards of open transoms and fire doors. Because the open transoms still were not repaired in April 1975, Astrup again noted these problems, which he again flagged for the Fire Marshal's attention. Because the Uniform Fire Code was adopted only four months after Tallman's last inspection, and several conditions at the Stratford violated this code, there is more than an ample basis for a jury to conclude that state agents had actual knowledge of the fire hazards at the Stratford Hotel, and that failure to act in the face of such knowledge constituted negligence.

The *Cracraft* court also indicated that a special duty of care may be created "by an ordinance or statute that sets forth mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole." 279 N.W.2d at 807 (footnote omitted). Plaintiffs claim that the annual inspection requirements for hotels set forth in Minn.Stat. § 299F.46 (1976) create a special duty to occupants of hotels.

Minn.Stat. § 299F.46 (1976) declares that it shall be the duty of the Commissioner of Public Safety to enforce all laws regarding the prevention of fires. Subdivision 2 of that statute states in part:

that presents a risk of serious harm to the individual or his property. When such serious injury is *reasonably foreseeable*, the governmental unit has a duty to exercise reasonable care for the individual's safety.

*Id.* at 102 (emphasis added).

The majority's reasoning is inconsistent with basic notions of tort law. As indicated in Comment, *supra*, at 402 n.84:

When the cause of action is alleged negligence, the plaintiff does not have to show that the private defendant actually knew of the dangerous condition. It is sufficient if the plaintiff shows that the defendant knew or should have known of the condition. *See, e. g., Dean v. Weisbrod*, 300 Minn. 37, 43, 217 N.W.2d 739, 743 (1974); *Hollinbeck v. Downey*, 261 Minn. 481, 486, 113 N.W.2d 9, 12–13 (1962); *Slinker v. Wallner*, 258 Minn. 243, 247–48, 103 N.W.2d 377, 381 (1960); *Johnson v. Clement F. Sculley Constr. Co.*, 255 Minn. 41, 50, 95 N.W.2d 409, 413 (1959).

9. On the night of the fire, Catherine Stade, the 81-year-old owner of the hotel, was the only person stationed at the hotel's desk. Because of her crippled condition, she had not been able to climb the hotel stairs for several months prior to the fire. She was overcome by smoke before she was able to activate the hotel's manual fire alarm, which was located approximately ten feet from her desk in the hotel lobby.

These facts indicate two potential violations of the Uniform Fire Code. First, that code requires that a switch to activate a manual fire alarm be "immediately adjacent" to a hotel's switchboard. Second, any "alarm sending station shall be provided at the hotel desk under continuous supervision of *responsible* employees." Life Safety Code § 11–2343 (emphasis added). During Deputy Fire Marshall Tallman's various inspections of the hotel, Mrs. Stade was unable to accompany him because of her frail health. Notwithstanding this knowledge, Tallman never inquired which "responsible employee" worked at the hotel desk.

(1) It shall be the duty of the commissioner to inspect,[10] or cause to be inspected, at least once annually, every hotel in this state; * * * and, when, upon such inspection, it shall be found that the hotel so inspected does not conform to or is not being operated in accordance with the provisions of Minnesota Statutes 1945, Sections 157.01 to 157.14, as amended, in so far as the same relate to fire prevention or fire protection of hotels, or the rules and regulations promulgated thereunder, or is being conducted in such a manner as to violate any other law of this state relating to fire prevention and fire protection of hotels, the commissioner and his deputies or designated alternates shall proceed as provided for in sections 157.01 to 157.14, or otherwise by statute.

(2) The word "hotel," as used in this subdivision, means any building or other structure, or any part thereof, kept, used, or maintained as, advertised as, or held out to the public to be an inn, an hotel, or other place where sleeping accommodations are furnished persons for hire, whether with or without meals, or a multiple dwelling housing five or more families.

The majority concludes that the statute is analogous to the provisions considered in *Cracraft* and *Hoffert*. The majority's interpretation of the statute at issue effectively rules out the possibility of a lawsuit by a party injured due to the violation of a statute or ordinance requiring building or safety inspections. Thus, the majority holding goes beyond the extreme result this court reached in *Cracraft*. The *Cracraft* opinion indicated that a specifically worded law would satisfy the third factor:

> We have already indicated that the applicable codes, ordinances, or statutes [in *Cracraft*] have not been drawn with sufficient specificity to create an inspection duty in favor of a class of individuals rather than the public as a whole.

279 N.W.2d at 807–08. If it is possible for any statute to create a special duty, the statute at issue should be viewed as meeting the *Cracraft* test. Minn.Stat. § 299F.46 (1976) is a specific law in which the legislature perceived a special danger to life associated with the operation of hotels. The statute's definition of "hotel" not only describes the type of buildings that the legislature wished to regulate, but it also specifically describes the class of persons the legislature wished to protect.[11] As a result, a statute was enacted singling out hotels for closer scrutiny by the state fire marshall and his staff. The legislature, in passing the statute, placed an affirmative burden on the state to find and eradicate fire code violations in hotels for the purpose of protecting persons in places "where sleeping accommodations are furnished persons for hire, whether with or without meals * * *." *Id.* § 299F.46(2).

The only apparent basis for the majority's reasoning is that this case, *Cracraft*, and *Hoffert* "involve the duty of a governmental entity to assure that third persons comply with its laws." Majority opinion at 8. This statement is derived from *Restatement (Second) of Torts* § 315 (1965). As stated in this section and by the *Cracraft* court, there is generally "no duty to prevent the misconduct of a third person." 279 N.W.2d at 804. However, the *Cracraft* court added that "[i]f there were no additional considerations in this case, it could be concluded at this point that the defendant municipality had no duty * * * to inspect. There are additional considerations * * *.

---

**10.** It is difficult to perceive why the legislature would state that "[i]t shall be the duty * * * to inspect" if the inspectors then had no duty to perform inspections with reasonable care and the state had no liability in tort when the inspectors deviated from the statutory standard.

**11.** The Minnesota Legislature's special concern about the safety of hotels and the protection of hotel patrons is longstanding, and is apparent from statutes in effect long before Minn.Stat.

§ 299F.46 was enacted. For example, 1903 Minn.Laws, ch. 301 required all hotel bedrooms to have ropes or metal fire escapes. 1905 Minn.Laws, ch. 343 authorized hotel inspectors to issue certificates of compliance which had to be posted in each hotel. Additional safeguards were added in 1913 when the legislature required fire extinguishers or standpipes and hoses in hotels. 1913 Minn.Laws, ch. 569.

The municipality's own ordinances require that it undertake inspections * * *." *Id.* at 804–05. This language indicates that a statute may create a special relationship between the state and a third party. Thus, if a particular statute is drafted specifically enough to satisfy the *Cracraft* court's third factor, a duty arises under *Restatement (Second) of Torts* § 315 (1965). Because the statute in question obviously satisfies the third element of the *Cracraft* test, the general rule that there is no duty to prevent the misconduct of third persons becomes irrelevant.

For the reasons discussed above, I would hold that the trial court's summary judgment order be reversed, and that this matter be remanded for a trial on the merits. At that trial I would permit plaintiffs to use the alleged breach of Minn.Stat. § 299F.46 (1976) as a basis for proving that the state breached its statutory duty of care. Permitting application of that statute, however, would not be equivalent to imposition of strict liability. Any person attempting to use a statute to establish a standard of care must still satisfy the elements of foreseeability and proximate cause.[12] *See, e. g., Kronzer v. First National Bank*, 305 Minn. 415, 426, 235 N.W.2d 187, 194 (1975) (violation of statute that prohibited unauthorized practice of law not proximate cause of injury); *Anderson v. Theisen*, 231 Minn. 369, 372, 43 N.W.2d 272, 273 (1950) (although decedent's death caused by thief's negligent driving, owner of vehicle had no liability because leaving keys in vehicle in violation of state law not proximate cause of death).

If this case were to be tried on the merits, it would be very difficult for the plaintiffs to prove all the elements of a negligence action. Notwithstanding this difficult burden, the Minnesota Constitution mandates that the plaintiffs at least be given an opportunity to prove that they are entitled to their requested relief. *See* Minn.Const. art. 1, § 8; *cf. Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 808 (Minn.1979) (sovereign immunity is inconsistent with the protection offered tort victims under the Minnesota constitution).

The parties deserve their day in court.

SHERAN, Chief Justice, dissenting.

I join in the dissent of SCOTT, J.

YETKA, Justice (dissenting).

I join in the dissent of Justice SCOTT.

WAHL, Justice (dissenting).

I join in the dissent of Justice SCOTT.

---

12. Any predictions that the state or any other governmental entity would face financial disaster by permitting plaintiffs to *attempt* to prove that the state was negligent are made "as if there were no such legal principles as fault, proximate cause or foreseeability, all of which operate to keep liability within reasonable bounds." *Riss v. City of New York*, 22 N.Y.2d 579, 586, 293 N.Y.S.2d 897, 902, 240 N.E.2d 860, 863 (1968); *cf. Cracraft v. City of St. Louis Park*, 279 N.W.2d at 811 (Kelly, J., dissenting) (if suit permitted against municipalities, the "cities will be held only to a standard of due and reasonable care, liability being limited by such principles as proximate cause and foreseeability"); Comment, *supra* at 400 n.68.