LOUIS D. ZERBY, TRUSTEE IN THE MATTER OF THE DEATH OF STEVEN J. ZERBY, v. CHESTER L. WARREN, d.b.a. COAST TO COAST STORE OF AUSTIN, MINNESOTA, AND ANOTHER.
RANDY RIEKEN AND ANOTHER, THIRD-PARTY DEFENDANTS.

210 N. W. 2d 58.

August 10, 1973—No. 43565.

*O'Brien, Ehrick, Wolf, Deaner & Downing* and *Ted E. Deaner,* for appellants.

*William J. Nierengarten,* for respondent Zerby.

*Hull & Hull* and *Robert G. Hull,* for respondent Rieken.

*Faegre & Benson, Wright W. Brooks,* and *W. James Fitz-maurice,* for respondent United States Plywood Corp.

KELLY, JUSTICE.

This action was brought for the wrongful death of Steven J. Zerby, a 14-year-old minor, who died at Austin, Minnesota, on August 31, 1969, as a result of intentionally sniffing glue. The action was brought against Chester L. Warren, the owner of the Coast-to-Coast Store of Austin, and Robert Deike, his employed clerk, for selling the glue negligently and in violation of Minn. St. 145.38.

Thereafter, defendants Warren and Deike filed a third-party action seeking contribution from Randy Rieken, the 13-year-old

companion of decedent who made the actual purchase of the glue and participated with decedent in sniffing it, and contractual indemnity from United States Plywood Corporation, the manufacturer of the glue. Plaintiff also asserted claims against the third-party defendants, and all defendants pleaded the defenses of contributory negligence and assumption of risk by decedent.

As a pretrial ruling, the trial court held that the trial would proceed solely under the theory of absolute liability for violation of Minn. St. 145.38 and that neither contributory negligence nor assumption of risk would be available as defenses. As a result of these rulings, the parties waived a jury trial and submitted the matter on stipulated facts. The trial court ordered judgment against defendants Warren and Deike and disallowed both third-party claims. Defendants appeal from the denial of their motion for judgment notwithstanding the findings or a new trial. We affirm.

The principal issue raised in this appeal is whether the sale of glue to a minor in violation of § 145.38 creates absolute liability on the part of the retailer for the wrongful death of another minor which resulted from his intentional sniffing of the glue. In relation to this issue, the question is raised whether comparative contributory negligence and assumption of risk are available as defenses to such an action. This case also involves the issue of whether a third-party contribution claim may be asserted against a minor companion of decedent who purchased the glue, furnished it to decedent, and participated with him in sniffing it in violation of Minn. St. 145.39. Finally, the question whether a contractual indemnity provision will allow a tortfeasor to be indemnified for the consequences of his violation of § 145.38 is presented.[1]

---

[1] The sale in this case having been made to Randy Rieken, another minor, and not directly to decedent, a proximate cause issue might have been presented to the court but was not, and we assume proximate cause is conceded. The trial court in an excellent memorandum commented on this point as follows: "Essential to decision in this case is

On August 31, 1969, decedent Steven Zerby and Randy Rieken went together to the shopping center in which the Coast-to-Coast Store in Austin is located. Rieken purchased two pint containers of Weldwood Contact Cement at the store from defendant Deike, who sold it within the course and scope of his employment as a clerk in the store. The glue contained toluene and was not a part of a packaged kit for construction of a model automobile, airplane, or similar item. At the time of the sale, neither defendant Warren nor Deike were aware that the sale was in violation of Minn. St. 145.38, which had become effective on July 1, 1969.

After Rieken had purchased the glue, he and decedent left the shopping center and within a few hours inhaled the fumes from the glue. Zerby's death resulted from the inhalation of the fumes, which had an injurious effect on his central nervous system, causing him to fall into a creek and drown. As a result of his death, decedent's next-of-kin have suffered damages stipulated by all parties except United States Plywood Corporation to be $11,250. (United States Plywood Corporation, although not a party to the stipulation when made, does not contest the amount agreed on.)

The Weldwood Contact Cement had been manufactured by United States Plywood and purchased by defendant Warren through Coast-to-Coast Central Organization, Inc. Central Orga-

---

a determination of direct cause. The rule consistently adhered to in Minnesota is expressed in Christianson against Chicago, St. Paul, M. & O. Railway Company, 67 Minn. 94, 69 N. W. 640, where Justice Mitchell expressed the rule as follows:

" '* * * The law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow.' "

nization's purchase order form contained a provision that the manufacturer-seller would indemnify the buyer against all liability resulting from the sale of the contact cement. Within 60 days of the death, the seller was duly notified of the death claim.

In 1969, the Minnesota Legislature recognized the potential harm which could result to minors from the sniffing of glue and enacted provisions to control its sale and use. Minn. St. 145.38 provides:

"Subdivision 1. No person shall sell to a person under 19 years of age any glue or cement containing toluene, benzene, zylene, or other aromatic hydrocarbon solvents, or any similar substance which the state board of health has * * * declared to have potential for abuse and toxic effects on the central nervous system. This section does not apply if the glue or cement is contained in a packaged kit for the construction of a model automobile, airplane, or similar item.

"Subd. 2. No person shall openly display for sale any item prohibited in subdivision 1."

Minn. St. 145.39 reads:

"Subdivision 1. No person under 19 years of age shall use or possess any glue, cement or any other substance containing toluene, benzene, zylene, or other aromatic hydrocarbon solvents, or any similar substance which the state board of health has * * * declared to have potential for abuse and toxic effects on the central nervous system with the intent of inducing intoxication, excitement or stupefaction of the central nervous system, except under the direction and supervision of a medical doctor.

"Subd. 2. No person shall intentionally aid another in violation of subdivision 1."

A violation of these statutory provisions is a misdemeanor. Minn. St. 145.40.

■ The threshold question on this appeal is the nature of tort liability which results from a violation of Minn. St. 145.38. The nature of tort liability created by a statutory violation was con-

sidered in the leading case of Dart v. Pure Oil Co. 223 Minn. 526, 27 N. W. 2d 555 (1947). That case involved an action for wrongful death resulting from the explosion of a mixture of gasoline and kerosene sold in violation of a statute. After examining many cases, we stated (223 Minn. 534, 27 N. W. 2d 559):

"* * * [I]t has been the long-standing rule of this court, *with certain exceptions,* that the violation of a statutory standard of conduct does not differ from ordinary negligence." (Italics supplied.)

The only difference between a statutorily imposed duty of care and a duty of care under common law is that the duty imposed by statute is fixed, so its breach ordinarily constitutes conclusive evidence of negligence, or negligence per se, while the measure of legal duty in the absence of statute is determined under common-law principles. After thus establishing the general rule, the court considered whether the Dart case fell within an exception (223 Minn. 535, 27 N.W. 2d 560):

"* * * This brings up the question whether this statute was intended for the protection of the public as a whole or for the protection of a limited class of persons from their inability to protect themselves. There are exceptional statutes which do not permit the defense of contributory negligence. * * *

\* \* \* \* \*

"The principle of these so-called exceptional statutes is to impose strict or *absolute* liability upon the defendant, which is greater than ordinary negligence liability, by placing upon him the entire responsibility for any injury which may result from their violation." (Italics supplied.)

In order to create absolute liability, it must be found that the legislative purpose of such a statute is to protect a limited class of persons from their own inexperience, lack of judgment, inability to protect themselves or to resist pressure, or tendency toward negligence. Restatement, Torts 2d, § 483, comment *c.* See, Prosser, Torts (4 ed.) § 36, p. 201, § 65, p. 425, § 68, p. 453. In

instances such as the present case, this legislative intent can be deduced from the character of the statute and the background of the social problem and the particular hazard at which the statute is directed. Dusha v. Virginia & Rainy Lake Co. 145 Minn. 171, 176 N. W. 482 (1920) ; Prosser, *Contributory Negligence as Defense to Violation of Statute,* 32 Minn. L. Rev. 105.

Types of statutes which would be exceptions to the general rule include (1) child labor statutes; (2) statutes for the protection of intoxicated persons; and (3) statutes prohibiting sale of dangerous articles to minors. Dart v. Pure Oil Co. *supra.* Obviously, the most direct analogy to the present case is the last-named type of statute. The obvious legislative purpose of § 145.38 is to protect minors unable to exercise self-protective care from harm resulting from sniffing the fumes of glue. This legislative policy inherent in the statute makes one who violates its provisions entirely responsible for damages or deaths which are the direct result of the illegal sale. It is one of the types of statutes referred to by the Dart decision as "exceptional statutes" and therefore violation of its provisions creates absolute liability for resulting harm.

■ Having thus concluded that Minn. St. 145.38 is one of these exceptional statutes which impose absolute liability or liability per se upon one who violates its provisions, we hold that it was proper for the trial court not to allow the defenses of comparative contributory negligence and assumption of risk. If these defenses were permitted, the evident purpose of such statutes would be defeated. Consequently, the legislature must have intended that no defense would displace the responsibility imposed by the statute.

As stated in Dusha v. Virginia & Rainy Lake Co. 145 Minn. 171, 172, 176 N. W. 482 (1920), where a minor was employed in violation of a child labor statute:

"The purpose of the statute is to protect children in life and limb * * * where, because of their immaturity, they are likely inappreciative of risks and prone to be careless and heedless. So

the statute altogether prohibits their employment and makes it a misdemeanor. A very great weight of authority establishes the doctrine that an employer who violates such a statute cannot assert contributory negligence nor the assumption of risks as a defense."

Restatement, Torts 2d, § 483, is in accord with this view:

"The plaintiff's contributory negligence bars his recovery for the negligence of the defendant consisting of the violation of a statute, unless the effect of the statute is to place the entire responsibility for such harm as has occurred upon the defendant."

Accord, Tamiami Gun Shop v. Klein, 116 So. 2d 421 (Fla. 1959); McMillen v. Steele, 275 Pa. 584, 119 A. 721 (1923); Pizzo v. Wiemann, 149 Wis. 235, 134 N. W. 899 (1912). See, Suess v. Arrowhead Steel Products Co. 180 Minn. 21, 230 N. W. 125 (1930). Consequently, the conduct of decedent in intentionally sniffing the glue cannot be interjected as a defense to the seller's liability.

Defendants also contend that the enactment of a comparative negligence statute in Minnesota requires the negligence of the parties to be compared in the present case. They argue that the former need to carve exceptions to the general rules of contributory negligence to avoid harsh results is not presently needed under the more equitable comparative negligence statute. However, the adoption of a comparative negligence statute did not create liability where none existed before. Because there can be no contributory negligence as a matter of law when the statute is designed to protect persons from their inability to protect themselves, the adoption of comparative negligence did not alter the exclusion of defenses.

Defendants also argue that decedent's contemporaneous violation of Minn. St. 145.39, which prohibits possession of glue by a minor with the intent to sniff it, should bar his recovery. They cite no cases which support this contention and we must reject

it for the same reasons other defenses to the violation of these statutes are barred.

■ While defendants do not question that the sale of the glue was a direct cause of decedent's death, they argue that the conduct of Randy Rieken in furnishing the glue to him and participating with him in sniffing its fumes in violation of § 145.39, subd. 2, quoted above, was a concurrent cause of the death. For this reason, it is contended that the trial court erred in disallowing defendants' contribution claim against Rieken.

We agree with the trial court's holding that the conduct of Rieken was not a direct concurring or superseding cause of decedent's death. We have consistently adhered to the view expressed in Purcell v. St. Paul City Ry. Co. 48 Minn. 134, 138, 50 N. W. 1034 (1892):

"There may be a succession of intermediate causes, each produced by the one preceding, and producing the one following it. It must appear that the injury was the natural consequence of the wrongful act or omission. The new, independent, intervening cause must be one not produced by the wrongful act or omission, but independent of it, and adequate to bring about the injurious result."

In the present case, the conduct of Rieken in furnishing the glue to decedent and participating with him in inhaling its fumes was not independent of the original wrongful sale of the glue by defendants. Rather, the sale of the glue set the stage for the subsequent conduct of the minors. While every accident results from a sequence of occurrences or causes, the law disregards all but the substantial. We therefore conclude that the contribution claim against Rieken was properly disallowed because his conduct was merely a reaction to the original wrongful act of defendants and therefore not a proximate cause. As was pointed out in the trial court's memorandum:

"* * * [T]he conduct of Randy Rieken, the 13-year old companion, as well as that of the Decedent, Steven Zerby, in using

the glue as 13-year olds might, was a normal response to what might be expected as a 'reaction to the original wrongful act'."

It should not be forgotten that the sale of the glue to Rieken was in violation of Minn. St. 145.38 and that Rieken as a minor was also a member of a limited class of persons that the legislature intended to protect from their inexperience, lack of judgment, and tendency toward negligence. To permit contribution would defeat this legislative purpose.

■  Defendants' final contention is that the trial court erred in disallowing their claim for indemnity against United States Plywood Corporation, the manufacturer of the glue. The contact cement was originally purchased through a Coast-to-Coast supply house pursuant to their order form which contained the following language:

"* * * Seller agrees to protect, defend, hold harmless and indemnify Buyer and its customers from and against any, and all liability, cost and expense arising from death or injuries to any persons or person or damage to property alleged to have resulted from the handling, display, sale, and use, consumption or distribution of Seller's product(s) or parts * * *."

If an indemnity agreement does not violate public policy, it is generally held that a party may contract to indemnify against his own negligent acts. The leading case in this jurisdiction concerning this point is N. P. Ry. Co. v. Thornton Bros. Co. 206 Minn. 193, 288 N. W. 226 (1939). That case involved an indemnity agreement whereby a construction firm agreed to indemnify the railroad against any and all claims which arose in any manner from the laying of a sewer line underneath the railroad's tracks. In the course of the work, damage occurred to a subcontractor as the result of the railroad's negligence. We held that since the agreement did not relieve the railroad of any absolute duty which it owed to the public, the indemnity provision was as legitimate as insurance. We pointed out, however, that if the contract relieves a person from negligence in the discharge of

144

an absolute duty imposed by law for the protection of others, it is void. See, Speltz Grain & Coal Co. v. Rush, 236 Minn. 1, 7, 51 N. W. 2d 641, 644 (1952); Pettit Grain & Potato Co. v. N. P. Ry. Co. 227 Minn. 225, 233, 35 N. W. 2d 127, 132 (1948).

In the present case, a duty is imposed by law not to sell glue to minors. By enactment of Minn. St. 145.38, the legislature has indicated that, in the interest of public welfare, minors should not be sold possibly harmful glue. Any agreement which relieves the defendants of the consequences of the violation of the public duty imposed by § 145.38 is against public policy. For this reason, we hold that the trial court properly disallowed defendants' claim for indemnity based on the contract provision.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.