Marvin SCOTT, Individually, and as Father and Natural Guardian of Richard Orton Scott, a Minor, Respondent,

v.

INDEPENDENT SCHOOL DISTRICT NO. 709, DULUTH, Minnesota, Appellant.

No. 46500.

Supreme Court of Minnesota.

July 1, 1977.

Mathias & Brown, Corrine D. Lynch and Robert E. Mathias, Duluth, for appellant.

Harry L. Munger, Duluth, for respondent.

Heard before TODD, YETKA and STAHLER, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This is an action to recover damages for injuries which occurred to the left eye of Richard Orton Scott during a junior high school industrial arts class. The matter was tried in St. Louis County District Court. The jury returned a verdict against the defendant school district and in favor of plaintiff Marvin Scott, individually, in the

sum of $3,100 and against the defendant school district and in favor of Marvin Scott, as father and natural guardian of Richard Orton Scott, in the sum of $54,000. The defendant appeals from a subsequent order entered by the court denying defendant's motion for a new trial. We affirm.

The principal issues presented by this appeal are:

(1) Whether a violation by a school district of Minn.St. 126.20, which requires the wearing of protective eye gear by students engaged, *inter alia,* in industrial arts classes, constitutes negligence as a matter of law.

(2) Whether contributory negligence is a defense to violations of Minn.St. 126.20.

(3) Whether a school district whose insurance coverage does not comply with the requirements of Minn.St. 466.04 is liable for the difference between the effective coverage and the statutory limits.

On the date of the accident, December 21, 1972, Richard Scott was 13 years old and a seventh grade student at Lincoln Junior High School in Duluth, Minnesota. He was in the process of drilling a hole in a plastic domino when the drill bit became stuck in the plastic. Richard testified that after another student had gotten a pipe wrench to hold the domino in place, he turned the electric drill press on again. The drill bit snapped off and a tiny piece of it became imbedded in his left eye.

At the time of the accident, Richard Scott was not wearing his safety glasses. At the beginning of the school year an individual pair of safety goggles was assigned to each industrial arts student at Lincoln Junior High who did not already have shatterproof prescription glasses. The students were instructed to wear safety goggles, but the rule was not consistently enforced.

The case was submitted to the jury in the form of special interrogatories. The trial court ruled that Minn.St. 126.20 was applicable to the case, that the school board was negligent as a matter of law, and that such negligence was a direct cause of Richard Scott's injury. The court also ruled that the statute did apply to the injured student for purposes of assessing contributory negligence but allowed the issue of contributory negligence to go to the jury on the basis of common law.

The verdict returned by the jury found Richard Scott 10 percent negligent and the school board 90 percent negligent. Damages were found for Marvin Scott, as father and natural guardian of Richard Scott, in the amount of $60,000 and for Marvin Scott, individually, in the amount of $3,100. Judgment was entered against the school board for $54,000, or 90 percent of the amount awarded to Marvin Scott, as father and natural guardian of Richard Scott, and for $3,100, or the full amount of the damages found for Marvin Scott individually.

1–2 *Violation of Minn.St. 126.20.*

The threshold question on this appeal is the nature of the tort liability that results from a violation of Minn.St. 126.20, which statute provides:

"Subdivision 1. Every person shall wear industrial quality eye protective devices when participating in, observing or performing any function in connection with, any courses or activities taking place in eye protection areas, as defined in subdivision 3, of any school, college, university or other educational institution in the state.

"Subd. 2. Any student failing to comply with such requirements may be temporarily suspended from participation in said course and the registration of a student for such course may be cancelled for willful, flagrant, or repeated failure to observe the above requirements.

"Subd. 3. Eye protection areas shall include, but to not be limited to, vocational or industrial art shops, science or other school laboratories, or school or institutional facilities in which activities are taking place and materials are being used involving:

"(a) Hot molten metals;

"(b) Milling, sawing, turning, shaping, cutting, grinding or stamping of any solid materials;

"(c) Heat treatment, tempering or kiln firing of any metal or other materials;

"(d) Gas or electric arc welding;

"(e) Repair or servicing of any vehicle or mechanical equipment;

"(f) Any other activity or operation involving work in any area that is potentially hazardous to the eye.

"Subd. 4. The governing body of a public educational institution referred to in subdivision 1 may purchase such devices in large quantities for the use of pupils, teachers and visitors.

"Subd. 5. Any person desiring protective-corrective lenses instead of the protective devices supplied by the educational institution shall, at his own expense, procure and equip himself with industrial quality eye protective devices.

"Subd. 6. 'Industrial quality eye protective devices,' as used in this section, shall mean devices meeting the standards of the American National Standard Institute, currently identified as Z87.1–1968."

The appellant argues that the court found violation of the above statute by the school district negligence per se when it should have made that finding as to the respondent.

■ With certain exceptions, violation of a statute may constitute negligence per se. As explained by Mr. Justice Mitchell in the leading decision of *Osborne v. McMasters,* 40 Minn. 103, 105, 41 N.W. 543 (1889):

"* * * Negligence is the breach of legal duty. It is immaterial whether the duty is one imposed by the rule of common law requiring the exercise of ordinary care not to injure another, or is imposed by a statute designed for the protection of others. * * * The only difference is that in the one case the measure of legal duty is to be determined upon common-law principles, while in the other the statute fixes it, so that the violation of the statute constitutes conclusive evidence of negligence, or in other words, negligence *per se.* * * * All that the statute does is to establish a fixed standard by which the fact of negligence may be determined."

Accord, e. g., *Kronzer v. First Nat. Bank of Minneapolis,* 305 Minn. 415, 235 N.W.2d 187 (1975); Restatement, Torts 2d § 286. See, generally, Note, 19 Minn.L.Rev. 666. See, also, Prosser, *Contributory Negligence as Defense to Violation of Statute,* 32 Minn.L. Rev. 105.

■ To constitute negligence per se, four elements must be satisfied, as noted by this court in *Kronzer v. First Nat. Bank of Minneapolis,* 305 Minn. 415, 423, 235 N.W.2d 187, 193:

"* * * We have long followed the criteria set forth by the American Law Institute in Restatement, Torts 2d, in determining which statutes give rise to a civil duty. Section 286 states:

'The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

'(a) to protect a class of persons which includes the one whose interest is invaded, and

'(b) to protect the particular interest which is invaded, and

'(c) to protect that interest against the kind of harm which has resulted, and

'(d) to protect that interest against the particular hazard from which the harm results.' "

Under this standard, the conduct of the school district clearly constituted negligence per se.

■ The trial court also found that violation of the statute by the student did not constitute contributory negligence. Generally, violations of statutes, as negligence per se, permit consideration of contributory negligence. See, Prosser, *Contributory Negligence as Defense to Violation of Statute,* 32 Minn.L.Rev. 105. However, in certain instances it has been found that by enacting the given legislation, the legislature intended to protect a limited class of persons from their own inexperience, lack of judgment, inability to protect

themselves or to resist pressure, or tendency toward negligence. Restatement, Torts 2d § 483, Comment c. See, generally, *Dart v. Pure Oil Co.,* 223 Minn. 526, 27 N.W.2d 555 (1947). In such instances, the plaintiff's contributory negligence, consisting of the violation of the statute, is not a bar to recovery. *Zerby v. Warren,* 297 Minn. 134, 210 N.W.2d 58 (1973). See, Restatement, Torts 2d § 483. See, also, 1 Wm. Mitchell L.Rev. 185 (contribution and indemnity in cases of absolute liability).

In some instances, such as in the Worker's Compensation Act,[1] the legislation expressly excludes certain defenses. In other circumstances, the legislative intent must be deduced from the character of the social problem and the particular hazard at which the statute is directed. To date, this court has noted the following to be such exceptional statutes:

(1) child labor statutes;[2]

(2) statutes prohibiting the sale of dangerous items to minors;[3]

(3) statutes for the protection of intoxicated persons;[4]

(4) factory acts requiring employers to guard dangerous machinery or to take other steps for the safety of employees.[5]

[5] The legislative intent here does not appear to make liability absolute on the part of the school district. Such a construction would place a nearly impossible burden on a school supervisor. For example, even if the supervisor instructed a student every day in the use of safety glasses, but while the instructor left the room or was working with another student a student lifted off the glasses temporarily and was injured, liability would follow. We do not think the legislature intended that the school district be strictly liable in such a situation.

Moreover, the trial court submitted the issue of contributory negligence to the jury. Thus, while the record might lend some support to the appellant's claim the court held violation of the statute on the part of the school district to be negligence per se, we believe the net effect of the court's ruling was to direct a verdict of negligence against the school district on the basis of the evidence in this case. Otherwise, the defense of contributory negligence would not have been submitted to the jury. The evidence of negligence on the part of the defendant was adequate for the court to hold as a matter of law it had violated the statute. At best, the supervision in this class was sporadic. At times it was nonexistent. Students were allowed to come and go almost at will.

Thus, the record adequately supports the trial court's decision to direct a verdict against the school district but to allow the issue of contributory negligence to go to the jury. The evidence did indicate there were signs warning the students to wear safety glasses and that safety glasses were provided at the beginning of the school year.

We have already indicated there was adequate evidence to support the jury's verdict. As to the amount, $60,000 for a permanent injury to an eye is not excessive.

### 3. Application of Faber

The final issue presented is the application of *Faber v. Roelofs,* 298 Minn. 16, 212 N.W.2d 856 (1973), on subsequent appeal,

1. See, Minn.St. 176.031 (contributory negligence, fellow servant, assumption of risk).

2. *Dusha v. Virginia & Rainy Lake Co.,* 145 Minn. 171, 176 N.W. 482 (1920); *Weber v. J. E. Barr Packing Corp.,* 182 Minn. 486, 234 N.W. 682 (1931).

3. *Zerby v. Warren,* 297 Minn. 134, 210 N.W.2d 58 (1973) (toxic glue). See, *Dart v. Pure Oil Co.,* 223 Minn. 526, 536, 27 N.W.2d 555, 560 (1947); *Kunda v. Briarcombe Farm Co.,* 149 Minn. 206, 183 N.W. 134 (1921) (gun).

4. See, *Mayes v. Byers,* 214 Minn. 54, 7 N.W.2d 403 (1943).

5. See, *Suess v. Arrowhead Steel Products Co.,* 180 Minn. 21, 230 N.W. 125 (1930) (semble) (the decision holds that assumption of risk does not apply as a defense; however, its rationale would also appear to cover contributory negligence). Accord, *Koenig v. Patrick Const. Corp.,* 298 N.Y. 313, 83 N.E.2d 133 (1948).

Minn., 250 N.W.2d 817 (1977), to the facts of this case. In the first *Faber* decision ("*Faber I*"), this court held that for purposes of assessing the maximum tort liability of a school district under Minn.St. 466.04 that a parent's action for an injured child's medical expenses was a separate "claim" for purposes of applying the then $50,000 statutory limit[6] on the liability of the school district to "any claimant." The child in *Faber* originally was awarded $94,770 for his bodily injuries. The father originally was awarded $42,900 for his medical expenses. Thus, this court held (298 Minn. 25, 212 N.W.2d 862):

"Minn.St. 466.04 limits a municipality's liability to 'any claimant' to $50,000. Since the parent's action is essentially separate from the child's action, we feel that an injured minor and his father are both claimants under § 466.04 and that each may recover up to $50,000."

The second *Faber* case ("*Faber II*") concerned the liability of the school district's insurers for this judgment. Two insurance policies covered the school district, each of which limited liability to $50,000 for bodily injury for "each person." For purposes of defining the limits of liability, however, the terms of the policies stated that the limit for "each person" was the company's liability for *all damages* because of bodily injury sustained by one person as the result of any one occurrence. Under applicable insurance law this limited the liability of *each* insurance company to a total of $50,000 for the combined claims of the parent and child. Both policies together thus provided total coverage of $100,000. This court did note, however, that—

"* * * had the school district not been covered by the [second] policy it would have been exposed to an uninsured liability because of our interpretation of the 'each claimant' language of § 466.04 in *Faber v. Roelofs, [I]*. We trust that school districts will take note of this problem and modify their insurance coverage accordingly so as to comply with the mandate of Minn.St. 466.12, subd. 3a." 250 N.W.2d 825.

The instant case presents an occasion in which this dictum must be applied. The policy covering the school district limits bodily injury liability to $50,000 for each person and further states that—

"[t]he limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence."

This is the same coverage provided by each separate policy in *Faber*.

School districts generally are immune. See, Minn.St. 466.12, subd. 2. They must, however, attempt to procure insurance meeting the § 466.04 limits at a certain cost (no more than $1.50 per student). See, Minn.St. 466.12, subd. 3a. If the school district gets insurance meeting § 466.04 standards, it is liable to the extent of coverage. See, Minn.St. 466.12, subd. 3a; 466.06; 466.04. This case raises this issue: If we assume that the school district did not procure insurance meeting the requirements of § 466.04 (by *Faber I* this would require $50,000 each for both the injuries to the child and the claims of the parent), then what is the liability of the school district?

Three possible situations might arise. The key statutory provision is Minn.St. 466.12, subd. 3a. It provides:

"A school district shall procure insurance as provided in section 466.06, meeting the requirements of section 466.04, if it is able to obtain insurance and the cost thereof does not exceed $1.50 per pupil per year for the average number of pupils. If, after a good faith attempt to procure such insurance, a school district is unable to do so, and the commissioner of insurance certifies that such insurance is unobtainable, it shall be subject to the provisions of subdivisions 1 and 2. If the school district fails to make a good faith attempt to procure such insurance and the commissioner of insurance does not certify that such insurance is unobtaina-

---

**6.** This limit was amended in 1976 to $100,000. L.1976, c. 264, §§ 1 to 3.

ble, then in that event section 466.12 shall not apply to such a school district and it shall be subject to all of the other applicable provisions of chapter 466."

The first possible situation is that the insurance does *not* comply with the requirements of § 466.04 *and* there has been *no* good faith attempt to procure it, *and* such insurance was obtainable. In that case, the school district is liable to the extent provided in § 466.04. By virtue of *Faber I,* this would be up to $50,000 each for the parent and for the child.

The second possible situation is that the insurance does not comply with the requirements of § 466.04 *and* there has been a good faith attempt to procure it *and* such insurance was *unobtainable* at the statutory price. In this case, the school district is immune.

The final possibility is that the insurance does not comply with the requirements of § 466.04 *and* there has been a good faith attempt to procure it *and* such insurance was obtainable. This is the situation in the instant case. The school district acted in good faith in attempting to comply with the standards of § 466.04, but received insurance which did not comply with the standards as subsequently set out in *Faber I,* although such insurance was available. Unfortunately, § 466.12, subd. 3a, does not treat this possibility. In the absence of express statutory guidance, we are left with three possible resolutions of this specific issue. We could hold that the school district is immune, that it is liable to the extent of its insurance coverage, or that it is liable to the extent of the § 466.04 limits ($50,000 plus $50,000 per *Faber I* ). We feel that the last possibility is applicable and hold that the school district is liable for any uninsured loss up to the limits set forth in *Faber I.*

Affirmed.