**Shannon Marie SEIM, a minor by her father and natural guardian David Seim and David Seim, individually, Appellants,**

v.

**Judith A. GARAVALIA, defendant and third party plaintiff, Respondent,**

v.

**David SEIM, et al, Third Party Defendants.**

No. 51755.

Supreme Court of Minnesota.

June 19, 1981.

807

Victor B. Anderson, St. Paul, for appellants.

Holst, Vogel, Erdmann & Vogel and George F. Vogel, Red Wing, for respondent.

SHERAN, Chief Justice.

This case arises from a dog bite inflicted upon the minor plaintiff by defendant's dog on May 2, 1979. The incident occurred after plaintiff Shannon Marie Seim, two days from her seventh birthday, called upon defendant's six-year-old son Scott. Tied to a tree in the backyard was defendant's dog, Hollow. The dog was friendly and had no history of growling or snapping at members of the defendant's family or at strangers. Hollow had just received some table scraps when the two children entered the yard. Encountering Hollow, Shannon decided to pet him and asked Scott if he bit. Although Scott said "no," Shannon asked him to pet Hollow first. Scott, who was standing to the right of the dog, petted him, at which time Hollow barked. Shannon, who was standing in front of the dog, then petted him on top of his head. When she did so, Hollow jumped up, knocked her down, and bit her in the face. The wound caused several severe lacerations in her cheek and near her lower lip. Stitches were needed to close the wound and medical records indicate that the scarring will be permanent. Medical expenses totalled $325.50, but two doctors recommended plastic surgery in the future, which would require the expenditure of an additional $2,300.

Plaintiffs subsequently initiated an action based upon the provisions of Minn.Stat. § 347.22 (1980). This statute states that:

If a dog, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term "owner" includes any person harboring or keeping a dog but the owner shall be primarily liable. The term "dog" includes both male and female of the canine species.[1]

At trial, defendant was permitted to raise the affirmative defenses of contributory negligence and assumption of risk. At the close of evidence, District Court Judge Thomas G. Forsberg set plaintiffs' special damages at $325.50 and directed a verdict in favor of plaintiffs on the issue of statutory liability. However, the Judge submitted the question of the minor plaintiff's con-

---

1. The 1978 statute contained an urban area limitation and did not include language making the owner primarily liable. These provisions do not affect the outcome in this case. Act of Apr. 12, 1951, ch. 315, 1951 Minn.Laws 413.

tributory negligence to the jury. The jury returned a verdict apportioning 50% of the negligence to the minor plaintiff and 50% to the defendant. Damages were set at $2,000. Plaintiffs appeal from the $1,162.75 judgment entered in their favor.[2] We reverse and remand this case to the district court with directions to restore the full verdict of $2,325.50. In addition, we confer the district court with jurisdiction to entertain a motion for a new trial on the issue of damages.

The statute at issue in this case permits a person attacked by a dog to recover damages simply by proving that the statute has been violated. If the elements set forth by the statute are satisfied, the legislature has decided to impose liability without fault, or strict liability, upon the owner of the dog. The question arises, therefore, whether the statutory strict liability of the defendant under Minn.Stat. § 347.22 (1980) may be compared with the ordinary negligence of the minor plaintiff under Minn.Stat. § 604.-01 (1980). In this case, the contributory negligence defense was submitted to the jury even though a verdict was directed in favor of plaintiffs on the issue of the statutory defense of provocation.[3]

The arguments of both parties center around an application of *Busch v. Busch Construction, Inc.*, 262 N.W.2d 377 (Minn. 1977), *noted in*, 5 Wm. Mitchell L.Rev. 517 (1979), to the statute at issue. In *Busch*, this court permitted the comparison of a defendant's strict products liability under *Restatement (Second) of Torts* § 402A (1965) to a plaintiff's ordinary negligence pursuant to the comparative negligence statute then in effect. The court held that "[a]ll other types of consumer negligence, misuse, or assumption of risk must be compared" to the defendant's strict liability except "a consumer's negligent failure to inspect a product or to guard against defects." *Id.* at 394. Appellants argue that the *Busch* decision should logically be con-

fined to the products liability setting. Respondent draws an analogy to cases that permit the comparison of plaintiff's misconduct in negligence per se cases and concludes that the *Busch* principles should be broadened to include all types of strict liability, not just products liability.

Due to the date on which this injury occurred, resolution of the issue before us involves more than an interpretation of *Busch*. The minor plaintiff was injured on May 2, 1979, nearly one year after the legislature's adoption of the comparative fault statute. Act of Apr. 5, 1978, ch. 738, § 11, 1978 Minn.Laws 836, 842 (effective date of statute is Apr. 15, 1978). The *Busch* case interpreted the pre-1978 statute. Accordingly, *Busch* is not necessarily dispositive of the instant case. The 1978 legislation significantly broadened the scope of the comparative negligence statute in an expansive definition of the word "fault," which replaced the word "negligence" in the statute:

"Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to *strict tort liability*. The term also includes breach of warranty, unreasonable assumption of risk not constituting an express consent, misuse of a product and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

Minn.Stat. § 604.01, subd. 1a (1980) (emphasis added). By including "strict tort liability" in the definition of fault, the legislature appears to have included all types of strict liability within the realm of the statute. The broad implications of the 1978 legislation are recognized by Professor Steenson. He observes that "it becomes apparent that the Minnesota Act, although consistent with

**2.** A third-party claim alleging negligent supervision was brought against the parents of the minor plaintiff. The district court directed a verdict in favor of the third party defendants and the third-party action was dismissed by this court in a prehearing conference order.

**3.** No appeal was brought from the district court's directed verdict.

*Busch,* expands the definition of apportionable plaintiff misconduct." Steenson, *The Anatomy of Products Liability in Minnesota: Principles of Loss Allocation,* 6 Wm. Mitchell L.Rev. 243, 335 (1980). Thus, instead of deciding whether *Busch* requires a comparison of the appellant minor's negligence to the strict liability of the defendant, we must decide whether the same comparison is required by the 1978 comparative fault statute.

A person who is found to have violated a statute may be liable in negligence or strict liability depending upon the type of statute violated. The distinction between these two principles is often blurred. Therefore, resolution of this case requires an understanding of what types of tort liability may arise due to the violation of a statute and the defenses that may be asserted in such instances.

 Negligence per se is a form of ordinary negligence that results from violation of a statute. Negligence consists of "a departure from a standard of conduct required by the law for the protection of others against unreasonable risk of harm." Prosser, *Contributory Negligence as a Defense to Violation of a Statute,* 32 Minn.L. Rev. 105, 110 (1948). The standard for ordinary negligence is "the traditional standard of the reasonable man of ordinary prudence." *Id.* Negligence per se may exist when the reasonable person standard is supplanted by a standard of care established by the legislature. Such statutes are often penal statutes that do not provide for a civil action. The statute is said to express a policy for the protection of a certain class of persons. *See* Minn.Stat. § 126.20 (1980) (requiring protective eye glasses when operating machinery); *id.* § 609.675 (requiring owners of refrigerators to detach door before abandoning); *id.* § 624.21 (outlawing the sale of fireworks). Thus, to violate the statute is to deviate from the standard of care owed to another. *See Osborne v. McMasters,* 40 Minn. 103, 41 N.W. 543

(1889) (Mitchell, J.). But, as pointed out by Prosser, negligence per se is not liability per se. "[T]here remain [the defenses of] assumption of risk, contributory negligence and proximate cause * * *. In short, such 'negligence per se' is merely ordinary negligence, whose existence is established by proof of the violation, but which once proved does not differ in its legal consequences from negligence at common law." Prosser, *supra,* at 111–12. Consistent with Prosser's analysis, this court has held that negligence per se actions are subject to the pre-1978 contributory negligence statute. *See, e. g., Scott v. Independent School District No. 709, Duluth,* 256 N.W.2d 485, 488–89 (Minn.1977).

 A second type of tort liability that may be created by statute is strict liability. The doctrine of strict liability at common law developed from the premise that one who creates a danger of harm to another by engaging in an abnormally dangerous activity should be held absolutely accountable for any resulting injuries. W. Prosser, Handbook of the Law of Torts § 78 (4th ed. 1971). The doctrine of strict liability may be distinguished from negligence or negligence per se in that liability results without a finding of fault.[4] At common law, liability was nearly absolute. Except for the defense of primary assumption of risk, a strictly liable defendant had to bear the entire responsibility for an injury inflicted upon a plaintiff. *Id.* § 79, at 522.

*Restatement (Second) of Torts* § 402A (1965) extended the common-law scope of strict liability to producers and distributors of products that, due to an unreasonably dangerous defect in design or manufacture, cause injury to another. Consistent with common-law notions, the supreme court did not view the doctrine of strict products liability as providing absolute liability either before or after passage of the comparative negligence statute in 1969. *See Busch v. Busch Construction, Inc.,* 262 N.W.2d 377 (Minn.1977); *Magnuson v. Rupp Manufac-*

---

4. As used in this context, fault does not mean fault as defined by Minn.Stat. § 604.01, subd. 1a (1980).

turing, Inc., 285 Minn. 32, 45, 171 N.W.2d 201, 209 (1969) ("the doctrine plaintiff seeks to recover under is strict liability and *not absolute liability*" (emphasis in original)). In *Armstrong v. Mailand*, 284 N.W.2d 343 (Minn.1979), the court took an additional step by indicating in dicta that most forms of plaintiff misconduct could be compared with both a defendant's strict products liability and a defendant's strict liability for an abnormally dangerous activity under the comparative fault statute. *Id.* at 350–51.

■ Another form of strict liability is statutory strict liability. This is distinct from negligence per se for two reasons. First, a statutory strict liability statute purports to create a basis for recovery where none would otherwise exist while statutes forming the basis of a negligence per se action are often penal and do not expressly provide for a civil action. For example, the statute at issue in this case states that the owner of a dog is "liable in damages" if certain conditions exist. Minn.Stat. § 347.-22 (1980). In contrast, *id.* § 624.21 merely prohibits the sale of fireworks. Although the latter statute provides for no civil liability, the legislature has established a policy that, if deviated from, may constitute negligence. Second, violation of a strict liability statute, by itself, renders the violator liable without any showing of fault. In the case of negligence per se, violation of the statute is a form of fault that may evidence negligence.

This court has previously considered the categorization of the statute at issue in this case. In *Lavalle v. Kaupp*, 240 Minn. 360, 61 N.W.2d 228 (1953), violation of the statute was viewed as imposing strict liability and not negligence:

A strict liability in damages, irrespective of any question of negligence and without proof of *scienter* as at common law, is imposed by § 347.22 upon the owner of a dog for injuries which the dog, without provocation, inflicts upon a person who is peaceably and lawfully conducting himself while in an urban area. The statute

leaves the dog owner in the same position which the common law left the keeper of a wild animal; namely, with the strict liability of an insurer.

*Id.* at 363, 61 N.W.2d at 230 (emphasis in original) (footnote omitted).

■ The preceding analysis appears to answer the question of what defenses are permitted in a statutory strict liability case. By implication from *Magnuson, Busch,* and *Armstrong,* and because of the specific inclusion of "strict tort liability" [5] in the comparative fault statute's definition of fault, the comparative fault statute requires the comparison of plaintiff negligence with defendant statutory strict liability. Thus, in the instant case, it may be argued that even though the minor plaintiff did not provoke the dog as a matter of law, she may have been negligent and that this negligence should be permitted to mitigate respondent's damages.

■ The above discussion would mandate affirmance in this case except for an additional factor. No consideration has yet been given to another doctrine that developed contemporaneously with the law of statutory strict liability and negligence per se—absolute liability. The doctrine of absolute liability is applicable when the legislature, by enacting a particular statute, intends to preclude certain defenses and place the entire responsibility for the injury upon the individual who violated the statute. The doctrine of absolute liability was recognized before enactment of the comparative negligence statute with reference to negligence per se in *Dart v. Pure Oil Co.,* 223 Minn. 526, 27 N.W.2d 555 (1947). In *Dart,* the court recognized the existence of an exceptional class of statutes that, by legislative design, do not permit the defense of contributory negligence when it is found that the statute "was intended * * * for the protection of a limited class of persons from their inability to protect themselves." *Id.* at 535, 27 N.W.2d at 560. Types of statutes included in this category are child

---

**5.** This court has previously held that statutory strict liability is tortious. *See Dahl v. North-* *western National Bank,* 265 Minn. 216, 121 N.W.2d 321 (1963).

labor statutes, statutes for the protection of intoxicated persons, and statutes prohibiting sale of dangerous articles to minors. *Id.* at 536, 27 N.W.2d at 560; *see Restatement (Second) of Torts* § 483, Comment c (1965).

In *Lavalle v. Kaupp,* 240 Minn. 360, 61 N.W.2d 228 (1953), the court indicated that the legislature intended the statute at issue in the instant case to leave the owner of a dog "with the strict liability of an insurer." *Id.* at 363, 61 N.W.2d at 230. *Lavalle* indicates that in 1953 this statute was equivalent to absolute liability except for the statutory defenses of provocation and failure to peaceably conduct oneself in any place where one may lawfully be.

█ It may be argued that both absolute liability based upon negligence per se and absolute statutory strict liability were abolished by the comparative negligence statute and its successor, the comparative fault statute. For assistance in resolving this difficult question of statutory construction, we look for guidance to the Uniform Comparative Fault Act, which provided a model for the 1978 Minnesota statute. *See* Steenson, *supra,* at 334. The comments to the Uniform Act state that "[a] tort action based on violation of a statute is within the coverage of the Act if the conduct comes within the definition of fault and unless the statute is construed as intended to provide for recovery of full damage irrespective of contributory fault." Uniform Comparative Fault Act § 1, Comment. Because the principle of absolute liability is based upon legislative intent, the comparative fault statute did not necessarily abolish absolute liability. *Zerby v. Warren,* 297 Minn. 134, 210 N.W.2d 58 (1973) is consistent with the comment in the Uniform Comparative Fault Act. The *Zerby* court considered a negligence per se claim against a storekeeper who sold glue to a minor in violation of a statute. In response to the argument that the comparative negligence statute abolished absolute liability, the court stated that:

> the adoption of a comparative negligence statute did not create liability where none

existed before. Because there can be no contributory negligence as a matter of law when the statute is designed to protect persons from their inability to protect themselves, the adoption of comparative negligence did not alter the exclusion of defenses.

*Id.* at 141, 210 N.W.2d at 63.

█ Although section 347.22 was not enacted to protect a limited class of persons unable to protect themselves, we hold that the legislature intended to impose absolute liability upon a violator of the law for two reasons. First this court in the *Lavalle* case indicated that the statute placed the entire responsibility of injury due to a dog bite upon the dog's owner if the elements of the statute were met. Thus, except for the defenses already built into the law, recovery is insured in all cases. Because *Lavalle* was decided before the enactment of the comparative negligence statutes, the statement of the *Zerby* court applies in this case: "the adoption of a comparative negligence statute did not create liability where none existed before." *Id.* Second, the Uniform Comparative Fault Act indicates that those who violate statutes such as section 347.22 cannot have their liability reduced due to the negligence of the plaintiff. The comment to section 1 states that statutes that are "construed as intended to provide for recovery of *full damage* irrespective of contributory fault," are not covered by the Uniform Act. Uniform Comparative Fault Act § 1, Comment (emphasis added). The statute at issue in this case states that "the owner of the dog is liable in damages to the person so attacked or injured *to the full amount of the injury sustained.*" Minn. Stat. § 347.22 (1980) (emphasis added). The similarity of language between the comment to the Uniform Act and the statute at issue herein provides a compelling reason to conclude that section 347.22 was meant to provide absolute statutory strict liability. Our application of the absolute liability doctrine during this era of comparative fault recognizes the principle that the legislative body that enacted the comparative fault statute has the authority to carve out or

preserve exceptions to the statute in the interest of public policy. We reverse and remand with directions to restore the full jury verdict.

The trial court proceeded upon the basis that *Busch* represented the controlling law in this case. Therefore, we now must consider whether a new trial on the issue of damages should be awarded. Plaintiffs complain that evidence regarding the dog's good character and defendant's lack of negligence was placed into the record. In a case such as here, in which the parties have expressly limited themselves to a specific cause of action, it is error to admit evidence that tends to refute another cause of action. The dog's good character or the defendant's lack of negligence is irrelevant to a claim brought under section 347.22. However, a new trial on the issue of liability is not warranted because the trial judge directed a verdict on the issue of statutory liability and because this court is now reversing the trial court's decision to submit the minor plaintiff's negligence to the jury. Plaintiffs argue, however, that the testimony erroneously admitted into evidence led to an inadequate damages award. The general rule is that a new trial on damages will be ordered "only where a verdict is so inadequate or excessive that * * * it could only have been rendered on account of passion or prejudice." *Krueger v. Knutson*, 261 Minn. 144, 154, 111 N.W.2d 526, 533 (1961). In addition, if damages are inadequate and there is an indication that they were awarded due to a compromise between the right of recovery and the amount of damages, a new trial on damages is proper. *Id.* at 155, 111 N.W.2d at 533–34; *Hurr v. Johnston*, 242 Minn. 329, 65 N.W.2d 193 (1954). The parties' failure to order a transcript in the instant appeal makes it impossible for us to determine whether a new trial on the issue of damages is warranted. We therefore grant jurisdiction to the trial court to entertain motions in this regard.

Reversed and remanded with directions.