John KEENAN, Respondent,

v.

HYDRA–MAC, INC., Respondent
(C1–87–1889), Appellant
(C3–87–1926),

George Plass Sales & Service,
Inc., Appellant.

HYDRA–MAC, Third Party Plaintiff,
Respondent (C1–87–1889), Appellant
(C3–87–1926),

v.

Joe PROM, individually, and d.b.a.
Prom's Auto Salvage, Third Party
Defendant, Respondent.

Nos. C1–87–1889, C3–87–1926.

Court of Appeals of Minnesota.

April 19, 1988.
Review Granted June 23, 1988.

Frederick L. Grunke, Donohue, Rajkowski, Hansmeier, Grunke & Jovanovich, Ltd., St. Cloud, for John Keenan.

William D. Flaskamp, Steven Foley, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Hydra–Mac, Inc.

Kevin S. Carpenter, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for George Plass Sales & Service, Inc.

Nikki K. Zielke, Law Offices of Daniel J. Buivid, for Joe Prom, individually, and d.b.a. Prom's Auto Salvage, third party defendant.

Heard, considered and decided by PARKER, P.J., and NIERENGARTEN and SCHULTZ,* JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from a judgment in favor of an injured employee against the manufacturer and dealer of a skid-steer loader and a judgment denying the manufacturer's and dealer's motions for judgment notwithstanding the verdict and a new trial. We affirm in part, reverse in part and remand.

## FACTS

In August 1973, Hydra–Mac, Inc. (Hydra–Mac) manufactured a Model 18 skid-steer loader which subsequently was sold by George Plass Sales & Service, Inc. (Plass). Sometime after the loader was sold as a new unit by Plass, Hydra–Mac developed a seat control interlock which prevented the control mechanisms of Model 18 loaders from moving unless the operator was properly seated on the machine. Hydra–Mac developed a "retro-fit kit" and advised its dealers to install the seat control interlock on Model 18 skid-steer loaders which did not have the safety device.

Plass reacquired the skid-steer loader sometime prior to November 1976 but did not install a seat control interlock on the machine. Plass resold the loader to Joe Prom and Prom's Auto Salvage (Prom) in November 1976. On May 15, 1979, sixteen-year-old John Keenan was operating the skid-steer loader while working for Prom. Keenan arose from the seat while the engine was running, bumped the controls as he was dismounting, and fell under the arms of the loader which lowered and pinned him against the machine.

Keenan sued Prom and Prom's insurer, Liberty Mutual Insurance Company (Liberty Mutual), for workers' compensation benefits. Keenan also sued Hydra–Mac and Plass. Hydra–Mac impleaded Prom. Hydra–Mac, Plass, and Prom filed various cross-claims for indemnity or contribution;

they also claimed Keenan's own negligence caused the accident.

Up to the time of trial, Liberty Mutual paid Keenan $56,815.65 in workers' compensation benefits. Liberty Mutual did not intervene in Keenan's action and did not file subrogation claims against Hydra–Mac or Plass. In October 1986, Plass offered $7,500 in exchange for a Pierringer release and served Keenan with a Rule 68 offer of judgment and written offer of settlement pursuant to Minn.Stat. § 549.09.

At the close of the trial, the court directed a verdict finding that Prom was negligent and that Prom's negligence was a direct cause of Keenan's accident because Prom allowed the sixteen-year-old Keenan to operate the skid-steer loader in violation of the Child Labor Standards Act. The jury apportioned the fault among Hydra–Mac (35 percent), Plass (25 percent), Prom (25 percent), and Keenan (15 percent) and determined Keenan's damages to the date of trial were $39,869.72 for lost earnings and medical expenses, and $5,000 for pain, disability and emotional distress. The jury also determined Keenan's future damages amounted to $49,725 for lost earnings, medical expenses, and pain, disability and emotional distress.

After the jury returned its verdict, but before the trial court adopted the jury verdict, Hydra–Mac, Plass, Prom and Liberty Mutual signed an agreement under which Liberty Mutual agreed to waive its "potential subrogation claims against Hydra–Mac and Plass for workers' compensation payments paid and payable in the future." Hydra–Mac and Plass moved the court for judgment notwithstanding the verdict, or alternatively for a new trial, and requested a determination of collateral sources. Prom also moved for judgment notwithstanding the verdict and for determination of collateral sources.

The trial court adopted the jury's verdict and found the Hydra–Mac Model 18 skid-steer loader was in a defective condition at the time of the accident, that the loader was "unreasonably dangerous because of

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

its design," and that the defective condition directly caused Keenan's injuries. The court found Plass and Prom were negligent and that their negligence was a direct cause of the accident. The trial court also found Prom employed Keenan to operate the skid-steer loader and that Keenan's own negligence contributed to the cause of the accident.

The trial court discounted the future damages ($49,725) to present value ($37,520.42), added Keenan's damages from the time of the accident to the date of trial ($44,869.72), and concluded Keenan's total damages were $82,390.14. The court reduced Keenan's total damages to $70,031.62 because fifteen percent of the fault was attributed to Keenan's negligence and concluded Keenan would have been entitled to judgment against Hydra–Mac and Plass for that amount were it not for the agreement/release among Hydra–Mac, Prom and Liberty Mutual. The court noted that Liberty Mutual had not asserted any subrogation claims for the $56,815.65 in workers' compensation benefits paid to Keenan prior to trial, concluded Liberty Mutual's subrogation claims were extinguished by its post-verdict agreement with Hydra–Mac, Plass and Prom, and ruled the workers' compensation benefits received by Keenan were a collateral source which should be deducted from Keenan's damages. However, the court deducted only $39,869.72 from the total damages because the court concluded the reduction for collateral sources "only applies to loss of earnings and medical expenses to the trial date." The court found Hydra–Mac and Plass "jointly and severally" liable to Keenan for his $30,161.90 "net judgment," but concluded Hydra–Mac was entitled to judgment against Plass for contribution of 41.67 percent of the total amount payable to Keenan by Hydra–Mac and that Plass was entitled to judgment against Hydra–Mac for contribution of 58.33 percent of the total amount payable to Keenan by Plass.

The trial court denied Plass' and Prom's motions for judgment notwithstanding the verdict and Plass' motion for a new trial. The court concluded Prom was "absolutely liable" for Keenan's injuries because Keenan was a minor and was allowed to operate the skid-steer loader in violation of the Child Labor Standards Act, but concluded its finding of absolute liability "simply prevents a determination of comparative negligence between the violator (employer) and the member of the protected class (child)" and did not prevent Keenan from asserting claims against tortfeasors.

## ISSUES

1. Did the trial court err by concluding the employer's statutory liability for its employee's injuries was not a superseding cause as a matter of law and does not insulate other tortfeasors from liability?

2. Did the trial court err by determining workers' compensation benefits received by the employee were a collateral source and deducting a portion of those benefits from the employee's damage award?

3. Did the trial court err by concluding the dealer was not entitled to costs and disbursements under Minn.R.Civ.P. 68?

## ANALYSIS

### 1. Statutory Liability

Minnesota's Child Labor Standards Act establishes specified conditions under which minors may be employed. *See* Minn. Stat. § 181A.04, subd. 5 (1978). Administrative regulations prohibit employees under age eighteen from operating or assisting in the operation of "power-driven machinery." *See* 50 Minn.Code Agency R. CLS:11(i) at 44 (1982 Reprint) (currently codified at Minn. R. 5200.0910 (1987)).

■ The parties do not dispute that Prom is absolutely liable to Keenan for Keenan's injuries and may not assert Keenan's negligence as a defense to its own liability because Keenan was a minor and operating "power-driven machinery" at the time of his accident in 1979. *See Dusha v. Virginia & Rainy Lake Co.*, 145 Minn. 171, 174, 176 N.W. 482, 483 (1920) (an employer employing a minor around dangerous machinery in violation of a child labor statute could not assert contributory negligence and assumption of risk defenses);

*Zerby v. Warren,* 297 Minn. 134, 139–40, 210 N.W.2d 58, 62 (1973) (statutes intended to protect a limited class of persons from their own lack of judgment, inexperience, or inability to protect themselves impose "absolute liability" on persons whose violations result in injuries to members of the protected class). Hydra–Mac and Plass claim Prom's "absolute liability" is a superseding cause of Keenan's injuries which relieves them of their liability to Keenan. We do not agree.

■ A cause is "superseding" if four elements are established:

(1) Its harmful effects must have occurred after the original negligence; (2) it must not have been brought about by the original negligence; (3) it must actively work to bring about a result which would not otherwise have followed from the original negligence; and (4) it must not have been reasonably foreseeable by the original wrongdoer.

*Regan v. Stromberg,* 285 N.W.2d 97, 100 (Minn.1979) (quoting *Kroeger v. Lee,* 270 Minn. 75, 78, 132 N.W.2d 727, 729 (1965)). Negligence and proximate cause generally are fact questions for the trier of fact. *See Hafner v. Iverson,* 343 N.W.2d 634, 638 (Minn.1984); *Illinois Farmers Insurance Co. v. Tapemark Co.,* 273 N.W.2d 630, 633–34 (Minn.1978). However, superseding cause issues may be determined by the court if the facts are sufficient. *See Hedlund v. Hedlund,* 371 N.W.2d 232, 236 (Minn.Ct.App.1985).

Plass correctly argues that Keenan would not have been injured by the loader if Prom had not allowed Keenan to operate the skid-steer loader in violation of the Child Labor Standards Act. However, Keenan would not have been injured, even if he were operating the machine unlawfully, if the loader were designed properly or fitted with a seat control interlock device. Since Keenan's injuries would not have occurred but for Hydra–Mac's negligent design and Plass' negligent failure to retro-fit the loader before reselling the machine to Prom, the trial court did not err by concluding Hydra–Mac's and Plass' negligence was a direct cause of the accident.

It was reasonably foreseeable that operators, including minors, would dismount Model 18 skid-steer loaders without stopping the engine and might accidently bump the controls while dismounting. Under the circumstances, Prom's violation of the Child Labor Standards Act was not a superseding cause as a matter of law and does not insulate Hydra–Mac and Plass from liability to Keenan because Prom's violation of the Child Labor Standards Act also was reasonably foreseeable. *See Bilotta v. Kelley Co.,* 346 N.W.2d 616, 625 (Minn.1984) (OSHA violations "were reasonably foreseeable" and therefore not a superseding cause relieving a manufacturer of its duty to produce a safe product). Allowing Keenan to assert claims against Hydra–Mac and Plass is not contrary to public policy or the Child Labor Standards Act because asserting claims against the co-tortfeasors does not relieve Prom of its liability to Keenan. *Cf. Zerby,* 297 Minn. at 144, 210 N.W.2d at 64 (enforcement of a contractual duty to indemnify would have relieved the defendants of the consequences of their violation of a statutory duty). The negligent design and negligent failure to retro-fit the loader were direct causes of Keenan's injuries. Keenan's fortuitous status as a minor should not preclude him from asserting claims against the manufacturer and dealer whose negligence contributed to his injuries. *Cf. Heckman v. Federal Press Co.,* 587 F.2d 612, 616 (3d Cir.1978) ("Whatever effect the [state safety] regulations might have as between employer and employee does not extend to relieve the manufacturer of its liability under [Restatement] § 402A as a matter of law.") (applying Pennsylvania strict liability law).

### 2. Collateral Sources

■ The trial court determined the workers' compensation benefits received by Keenan prior to trial should be deducted from Keenan's damages because the court concluded the workers' compensation benefits were a collateral source within the meaning of the collateral source statute.

"collateral sources" means payments related to the injury or disability in question made to the plaintiff, or on the plaintiff's behalf up to the date of the verdict, by or pursuant to:

(1) a federal, state, or local income disability or *workers' compensation act;* or other public program providing medical expenses, disability payments, or similar benefits; * * *.

Minn.Stat. § 548.36, subd. 1 (1986) (emphasis added).

In a civil action, whether based on contract or tort, when liability is admitted or is determined by the trier of fact, and when damages include an award to compensate the plaintiff for losses available to the date of the verdict by collateral sources, a party may file a motion within ten days of the date of entry of the verdict requesting determination of collateral sources. If the motion is filed, the parties shall submit written evidence of, and the court shall determine:

(1) amounts of collateral sources that have been paid for the benefit of the plaintiff or are otherwise available to the plaintiff as a result of losses *except those for which a subrogation right has been asserted;* * * *.

*Id.* § 548.36, subd. 2 (emphasis added).

The court shall reduce the award by the amounts determined under subdivision 2, clause (1) * * *.

*Id.* § 548.36, subd. 3(a).

The trial court concluded the post-verdict agreement/release among Hydra–Mac, Plass, Prom and Liberty Mutual extinguished any subrogation claim that may have been brought on behalf of Liberty Mutual and determined the $56,815.65 in workers' compensation benefits was a collateral source, but reduced Keenan's judgment only by $39,869.72 because the court concluded "[t]he reduction only applies to loss of earnings and medical expenses to the trial date." Plass and Hydra–Mac contend the trial court should have deducted the entire $56,815.65 from Keenan's judgment.

Keenan argues that the agreement/release among Hydra–Mac, Plass, Prom and

Liberty Mutual proves a subrogation claim was asserted and that none of the workers' compensation benefits should have been deducted. There is nothing in the record that indicates any subrogation interests were asserted. The agreement, in fact, effectively precludes the insurer from asserting a subrogation claim in the future. Consequently, the trial court did not err by concluding the collateral source statute applies to Keenan's workers' compensation benefits. *See Johnson v. Farmers Union Central Exchange, Inc.*, 414 N.W.2d 425, 432 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Nov. 24, 1987).

However, the trial court did err by reducing Keenan's judgment by only $39,869.72. The collateral source statute refers to payments *"made to* the plaintiff * * * *up to the date of the verdict"* and "amounts of collateral sources that *have been paid* * * * or are otherwise available to the plaintiff as a result of losses." *See* Minn. Stat. § 548.36, subds. 1, 2(1) (1986) (emphases added). The trial court should have reduced Keenan's judgment by $56,815.65, the amount of payments "made to" Keenan "up to the date of the verdict." The collateral source statute is intended to prevent double recovery. *See Johnson*, 414 N.W. 2d at 432. Since Keenan will receive full compensation for his injuries from the parties, reduction of the judgment by the entire $56,815.65 is consistent with the double-recovery policy of the collateral source statute.

Keenan argues the agreement/release should not be enforced because the release attempts to circumvent the distribution formula in the workers' compensation statute and imposes the entire cost of collection on the injured party. *See* Minn.Stat. § 176.061, subd. 6 (1986). Keenan's arguments fail for two reasons. First, section 176.061 of the workers' compensation statute only applies to proceeds in which an employer has a subrogation interest. *See Henning v. Wineman*, 306 N.W.2d 550, 552 (Minn.1981). No subrogation interests exist in this case. Second, section 548.36 clearly applies to workers' compensation benefits and allows the court to offset any

reduction by the amount of the injured party's collection costs if the costs are presented and proved properly. *See* Minn. Stat. § 548.36, subds. 2(2), 3 (1986).

### 3. Costs and Disbursements

■ Plass argues that Keenan's judgment is reduced to $13,215.97 instead of $30,161.90 if the full $56,815.65 is deducted, and asserts that it is entitled to costs and disbursements under Minn.R.Civ.P. 68 because its $5,507 "share" of the reduced judgment is less than its written offer of judgment or settlement of $7,500.

Plass was not a "prevailing party" within the meaning of Minn.Stat. § 549.09 (1986) and its $7,500 settlement offer was less favorable than the "judgment finally entered" against it. *See* Minn.R.Civ.P. 68. The trial court adjudged Plass and Hydra–Mac "jointly and severally liable" for Keenan's injuries. Although Plass may assert a contribution claim against Hydra–Mac which ultimately may reduce Plass' total payments with respect to Keenan's injuries, Plass nonetheless is liable to Keenan for payment of the entire judgment. Under the circumstances, the trial court did not err by concluding Plass was not entitled to costs and disbursements under Rule 68.

### DECISION

The trial court did not err by concluding the employer's violation of the Child Labor Standards Act was not a superseding cause as a matter of law. The trial court did not err by concluding the employee's workers' compensation benefits were a collateral source which should be deducted from the employee's judgment against the manufacturer and dealer. However, the trial court should have deducted the entire amount of the workers' compensation benefits because the benefits were paid to the employee prior to the date of the verdict. This case is remanded so the entire amount of workers' compensation benefits received prior to the verdict may be deducted from the employee's award and the "net judgment" against the manufacturer and dealer reduced accordingly. The trial court did

not err by concluding the dealer was not entitled to costs and disbursements under Rule 68.

Affirmed in part, reversed in part, and remanded.